**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
------------------------------------------------------------------------X
LONNETTE GREENE,

                              Plaintiff,                          No. 14 Civ. 3676 (AT)

     vs.

UNITED STATES DEPARTMENT OF HOUSING
AND URBAN DEVELOPMENT;
DESHLER APARTMENT ASSOCIATES, L.P.,

                              Defendants.
------------------------------------------------------------------------X

**PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT UNITED STATES DEPARTMENT OF HOUSING AND URBAN DEVELOPMENT'S MOTION FOR SUMMARY JUDGMENT**

Manhattan Legal Services
1 West 125th Street, 2nd Floor
New York, New York, 10027
Telephone: (646) 442-3100

By:
Cynthia C. Weaver
Melissa Banks

*Attorneys for Plaintiff Lonnette Greene*

i

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ............................................................................... iv–vii

PRELIMINARY STATEMENT ............................................................................... 1

STATEMENT OF FACTS .................................................................................... 3

I.  Project-Based Section 8 Regulatory and Statutory Framework ........................................... 3

II.  Background ................................................................................................ 5

A.  Overview of Ms. Greene's Tenancy in the Subject Apartment ....................................... 5

B.  Ms. Greene's Improper Removal from the Section 8 Household Composition ........... 7

i.  Deshler's Duty to Collect Accurate Household Composition Information . 7

ii.  Ms. Greene's Removal from the Household Composition ......................... 8

C.  Ms. Lawless's Attempts to Restore Ms. Greene to the Household Composition ....... 11

D.  Ms. Greene's Lack of Recourse to Challenge the Loss of the Subsidy ..................... 14

i.  Ms. Greene's Initial, 2012 Efforts to Seek Continuation of
the Section 8 Subsidy .................................................................. 15

ii.  Ms. Greene's Continued Attempts to Achieve Continuation of
the Subsidy in 2013 ..................................................................... 15

iii.  Deshler's Request to HUD for Continuation of the Subsidy on Ms.
Greene's Behalf  ......................................................................... 17

iv.  HUD's Testimony Support a Finding that a Tenant Improperly Removed
from the Household Composition is Entitled to Due Process ................... 18

E.  The HUD Handbook "Waiver" Provision ................................................... 19

F.  HUD's Denial of Ms. Greene's Waiver Request ......................................... 20

ARGUMENTS ................................................................................................. 24

I.  Legal Standard ............................................................................................ 24

II.  Disputed Material Facts Exist Concerning Ms. Greene's Due Process Claims ............... 24

    A. Ms. Greene Has a Constitutionally Cognizable Property Interest
      In Continuation of the Section 8 Subsidy ....................................................24

    B. HUD Denied Ms. Greene Continuation of the Section 8 Subsidy
      Without Adequate Due Process ...................................................................29

III.    HUD's False Allegations and Disparaging Attack on the Credibility of Ms. Greene's
Claims and Motives Create Material Factual Disputes Rendering Its Arguments
Unsuitable for Summary Judgment ................................................................36

IV.    Disputed Material Facts Exist Concerning Ms. Greene's APA Claims ..........................39

    A. Ms. Greene Challenges HUD's Affirmative Act of
      Denying Her Waiver Request ........................................................................39

    B. There are Disputed Material Facts Concerning Whether HUD's Denial of the
      Continuation of the Section 8 Subsidy and Waiver Provision was Arbitrary and
      Capricious and an Abuse of Discretion ....................................................... 41

CONCLUSION.......................................................................................................46

# TABLE OF AUTHORITIES

## CASES

*2013 Amsterdam Avenue Hous. Assocs v. Estate of Almeda Wells*,

    2006 N.Y. Slip Op. 50084(U) (App. Term, 1st Dep't 2006).......................................42, 43

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986) .................................................................24

*Baldwin v. Hous. Auth. of City of Camden*, 278 F. Supp. 2d 365 (D.N.J. 2003)..........................28

*Bechtel v. Adin. Rev. Bd.*, 710 F.3d 443 (2d Cir. 2013)................................................................40

*Braschi v. Stahl Assocs. Co.*, 74 N.Y.2d 201 (N.Y. 1989) ...........................................................43

*Burlington Truck Lines, Inc. v. United States,* 371 U.S. 156 (1962) ............................................41

*Butland v. Bowen,* 673 F. Supp. 638 (D. Mass. 1987) .................................................................26

*Celotex Corp. v. Catrett*, 477 U.S. 317 (1986) ...........................................................................24

*Coley v. Brook Sharp Realty LLC*, No. 13 Civ. 7527(LAP),

    2015 WL 5854015 (S.D.N.Y. 2015)..................................................................42, 45, 46

*Cutler v. Hayes*, 818 F.2d 879 (D.C. Cir. 1987)...........................................................................41

*Davis v. Mansfield Metro. Hous. Auth.*, 751 F.2d 180 (6th Cir. 1984) ............................27, 28, 35

*Deshler Apts. Assocs. v. Greene*, L&T Index No. 82842/12

    (Hous. Part, Mar. 4, 2013) (Stoller, J.) ...........................................................................43

*Eastern Parkway Hap Assoc. LP v. Rivera*, L&T Index No. 052150/2014, N.Y.L.J.

    1202674912488 (Civ. Ct. Kings Co., Oct. 8, 2014) ............................................43

*Evans v. Franco*, 93 N.Y.2d 823 (N.Y. 1999).......................................................................29, 44

*Fabrikant v. French*, 691 F.3d 193 (2d Cir. 2012) .....................................................................24

*F.C.C. v. Fox Television Stations, Inc.*, 556 U.S. 502 (2009).......................................................41

*F.C.C. v. NextWave Pers. Commc'ns Inc.*, 537 U.S. 293 (2003) .................................................42

*Freeport Minerals Co. (Freeport-McMoran, Inc.) v. United States*,

    776 F.2d 1029 (Fed. Cir. 1985)................................................................41

*Friends of the Wild Swan v. Weber,* 767 F.3d 936 (9th Cir. 2014)................................................42

*Goldberg v. Kelly,* 397 U.S. 254 (1970) ........................................................27, 30, 31

*Guertin v. United States*, 743 F.3d 382 (2d Cir. 2014).................................................40

*Inwood Assoc. LP v. Williams*, L&T Index No. 54100/14, NYLJ 1202722672079

    (Civ. Ct. N.Y. Cnty., Mar. 13, 2015) ............................................................43

*Kelly v. Railroad Retirement Board,* 625 F.2d 486 (3d Cir. 1980)................................................25

*Lands Council v. McNair,* 537 F.3d 981 (9th Cir. 2008).................................................42

*Lenoxville Assocs. v. Downs*, 4 Misc. 3d 138(A) (App. Term, 1st Dep't 2013).........................43

*Los Tres Unidos Associates, LP. v. Colon*, 45 Misc. 3d 129(A),

    2014 N.Y. Slip Op 51566(U) (App. Term, 1st Dep't 2014)............................................43

*Mathews v. Eldridge*, 424 U.S. 319 (1976) ........................................................25, 30, 31, 33

*Manhattan Plaza Assocs. v. DHPD*, 3 Misc. 3d 717 (Civ. Ct., N.Y. Cnty., 2004),

    *aff'd* 8 A.D.3d 111 (1st Dep't 2004)................................................................43

*Nagle v. Marron*, 663 F.3d 100 (2d Cir. 2011) ........................................................24

*Nambe Pueblo Hous. Entity v. HUD*, No. 11-CV-01516-RPM,

    2014 WL 9051511 (D. Colo. 2014) ................................................................40

*Narumanchi v. Board of Trustees of Connecticut State University*,

    850 F.2d 70 (2d Cir. 1988).................................................................25

*Natural Res. Council Fund v. Brong*, 492 F.3d 1120 (9th Cir. 2007) ..........................................42

*Neddo v. Hous. Auth. of City of Milwaukee*, 335 F. Supp. 1397 (E.D. Wis. 1971).....................28

*NSK Corp. v. United States*, 637 F. Supp. 2d 1311 (Ct. Int'l Trade 2009)............................41, 42

*Raper v. Lucey,* 488 F.2d 748 (1st Cir. 1973) ..............................................................26

*Ressler v. Pierce*, 692 F.2d 1212 (9th Cir. 1982) ..............................26, 28, 34, 35, 36

*Rivlin Houses Assocs. v. Estate of Brown*, 9/20/91, N.Y.L.J., p. 22, col. 2

    (App. Term, 1st Dep't 1991)...................................................................................43

*Sec. Ins. Co. of Hartford v. Old Dominion Freight Line Inc.*,

    391 F.3d 77 (2d Cir. 2004) ...................................................................................24

*Strong v. Board of Educ. of Uniondale Union Free School Dist.,*

    902 F.2d 208 (2d Cir. 1990), *cert. denied,* 498 U.S. 897 (1990)......................25

*Upaca Site 7 Assocs. v. Crawford*, 12 Misc. 3d 1154(A) (Civ. Ct., N.Y. Cnty., 2006) ...............43

*Valley Dream Hous. Co.*, 16 Misc. 3d 1138(A) (Nassau Cnty. Dist. Ct., 2007) ..........................42

*Vandermark v. Housing Authority of City of York,* 663 F.2d 436 (3d Cir. 1981).........................25

*Washington v. Los Angeles Second Baptist Homes, Inc.*, No. CV 13-2187 MMM FFM,

    2014 WL 2197757 (C.D. Cal. May 24, 2014) .................................................28

*Watson v. U.S. Dep't of Hous. & Urban Dev.*, 645 F. Supp. 345

    (S.D. Ohio 1986).......................................................................26, 27, 28, 33, 35

*Wilson v. Nw. Mut. Ins. Co.*, 625 F.3d 54 (2d Cir. 2010) .............................................24

*Zalaski v. City of Bridgeport Police Dep't*, 613 F.3d 336 (2d Cir. 2010) ....................24

**CONSTITUTION, STATUTES, REGULATIONS, POLICY MATERIALS**

5 U.S.C. § 702..............................................................................................................39

5 U.S.C. § 706.........................................................................................................39, 40

42 U.S.C. § 1437a...................................................................................................3, 20

42 U.S.C. § 1437f ...............................................................................................3, 7, 20

42 U.S.C. § 1441..................................................................................................... 3

42 U.S.C. § 1441(a) ................................................................................................3

24 C.F.R. § 5.230 ...................................................................................................4

24 C.F.R. § 5.403 .......................................................................................3, 22, 27

24 C.F.R. § 236.2 (1995) ..........................................................................3, 22, 32

24 C.F.R. § 236.710 ...............................................................................................3

24 C.F.R. §§ 880–881 .................................................................................3, 4, 7, 20

Fed. R. Civ. P. 56 ................................................................................................24

HUD Handbook 4350.3, § 1-8 ...........................................................................5, 6, 20

HUD Handbook 4350.3, § 5-31 ...........................................................................7

HUD Handbook 4350.3, § 7-1 .............................................................................3

HUD Handbook 4350.3, § 7-11 ...........................................................................4

HUD Handbook 4350.3, § 7-12 ...........................................................................4

## <u>PRELIMINARY STATEMENT</u>

Plaintiff Lonnette Greene ("Ms. Greene") submits this Memorandum of Law in opposition to Defendant United States Department of Housing and Urban Development's ("HUD") motion for summary judgment.

Ms. Greene is a low-income, single mother, who has lived at the property owned by Defendant Deshler Apartments ("Deshler") since the age of two, when she moved in with her mother, Dawn Lawless ("Ms. Lawless"), who was the head of household. D56.1 at ¶ 27, 29; P56.1 at ¶¶ 101, 102, 181.[1]  When she had an income, Ms. Greene would give money to Ms. Lawless for rent.  P56.1 at ¶¶ 111-113. In or around 2007, unbeknownst to Ms. Greene, Ms. Lawless removed her from the household composition based only on an oral request. D56.1 at ¶ 50; P56.1 at ¶¶ 120-122.  Deshler never verified or required documentation to substantiate that Ms. Greene had vacated and Ms. Greene continued to live at the premises.  P56.1 at ¶ 123. Shortly thereafter, Ms. Lawless attempted to add Ms. Greene back to the household composition. P56.1 at ¶ 130. Unfortunately, Deshler outright denied Ms. Lawless's initial and repeated requests. P56.1 at ¶ 130-132.  In or around 2012, Ms. Lawless left the apartment to live and care for her mother. D56.1 at ¶ 82; P56.1 at ¶ 125.  Ms. Greene was only able to succeed to the apartment by defending and winning a holdover trial in housing court against Deshler.  D56.1 at ¶¶ 90-91; P56.1 at ¶ 142-143.

Although Ms. Greene won the right to the apartment, Deshler refused to continue Ms. Greene's Section 8 subsidy.  D56.1 at ¶ 91; P56.1 at ¶ 144. Ms. Greene was then compelled to

---

[1] While the parties have developed a joint Rule 56.1 statement, per this Court's request, Defendant repeatedly refers in its Memorandum of Law in Support of its Motion for Summary Judgment to "HUD's Statement of Material Undisputed Facts Pursuant to Local Civil Rule 56.1" and "HUD 56.1 Statement." Defendant's Memorandum of Law in Support of Motion for Summary Judgment, at 23 note 2, 33, 35, 36.  In order to prevent confusion, and in order to ensure uniform citations, this Memorandum of Law will refer to facts supplied by Defendant in the joint 56.1 Statement of Facts separately from those supplied by Plaintiff's. They will be referred to as "D56.1" and "P56.1" respectively, though they are citations to the same document.

seek the continuation directly from HUD.  P56.1 at ¶ 145-147. Despite Ms. Greene being the daughter of Ms. Lawless, Deshler possessing knowledge that Ms. Greene continuously occupied the apartment with Ms. Lawless until she vacated, Deshler's improper removal of Ms. Greene from the lease and improper refusals to put her back on, Ms. Greene paying her rent portion to her mother when she was working, and the housing court determining that Ms. Greene has successfully asserted her succession claim, HUD refused to continue the Section 8 subsidy for Ms. Greene because she did not sign the last lease, a requirement pursuant to a HUD Handbook, but waivable because it is not required by HUD regulations or statutes.  D56.1 at ¶¶ 4, 32, 90-91 P56.1 at ¶¶ 111-113, 120-122, 124, 134-135, 142-143, 149.

Given the unique facts of Ms. Greene's case, the Fifth Amendment Due Process Clause and the Administrative Procedure Act ("APA") require HUD to at least meaningfully consider granting Ms. Greene a waiver of the Handbook requirement—a waiver that is authorized by the Handbook. *See* D56.1 at ¶ 4. HUD denied Ms. Greene's waiver request in a tautological manner by relying on not the individualized facts of her case, but solely upon the very Handbook requirement that Ms. Greene sought HUD to waive—the denial was based on her failure to be a signatory to the lease at the time Ms. Lawless vacated the apartment.  P56.1 at ¶ 172, 173, 176, *See* P56.1 101.

Summary judgment must be denied because, as HUD's own papers make clear, there are numerous disputed material facts.  First, HUD argues that Ms. Greene's due process claim fails because she does not have a property interest as she is neither a Section 8 participant nor an applicant.  However, Ms. Greene is already a Section 8 participant as a family member of Ms. Lawless's household.  She is also more than a new Section 8 applicant because as someone seeking to succeed to the family's subsidy, she already has an interest in the benefit.

Furthermore, Ms. Greene was not accorded even minimal due process regarding the loss of her apartment and subsidy.  *See* P56.1 at ¶¶ 136-140, 156, 179.

Second, HUD's argument that Ms. Greene is challenging an agency inaction in her APA claims is incorrect because Ms. Greene is challenging HUD's waiver denial and there are issues of fact as to the nature and procedure for that denial. *See, e.g.,* D56.1 at ¶ 5; Plaintiff's Response to D56.1 at ¶ 5.

Accordingly, HUD's summary judgment motion must be denied.

## STATEMENT OF FACTS

## I.     PROJECT-BASED SECTION 8 REGULATORY AND STATUTORY FRAMEWORK

HUD oversees and regulates the Section 8 Program.  D56.1 at ¶ 1. The Section 8 Program is intended to aid "*low-income families* in obtaining a decent place to live . . . [,]"42 U.S.C. §§ 1437a, 1437f, as well as to accomplish "the realization as soon as feasible of the goal of a decent home and suitable living environment for *every* American family."  42 U.S.C. §§ 1441, 1441(a) (emphases added). According to HUD regulations, this program provides safe and sanitary rental housing through a system of housing assistance payments, or subsidies.  24 C.F.R. § 880.101; 42 U.S.C. § 1437f(b)(1). In defining the term "family," relevant federal regulations enumerate specific categories, including the following:

(i)  A family with or without children . . . ;

(ii) An elderly family;

(iii)A near-elderly family;

(iv)A disabled family;

(v)  A displaced family; and

(vi)The remaining member of a tenant family.

3

24 C.F.R. § 5.403.  A "qualified tenant" is defined as "an individual or [f]amily whose Annual Income does not exceed 80 percent of the median income for the area, as determined by HUD with adjustment for smaller and larger families," with some exceptions.  24 C.F.R. § 236.710 (citing to the definition of Qualified Tenant in § 236.2, subpart A, Apr. 1, 1995 edition of 24 C.F.R., parts 220 to 499).

The building owner, or landlord, "is responsible for obtaining and verifying information related to income eligibility . . . ."  24 C.F.R. § 880.603(b); *see* Weaver Decl. ¶ 2, Ex. A (HUD Handbook) § 7-1. The landlord must reexamine income and family composition of all tenant families at least every twelve months by consultation and verification. 24 C.F.R. § 880.603(c)(1).The tenant rent and Housing Assistance Payments are then adjusted accordingly based on the family composition size and income. *Id.* Interim reexaminations are conducted if there are income changes between regularly scheduled reexaminations and the owner "must consult with the family and make any adjustments."  24 C.F.R. § 880.603(c)(2); Weaver Decl. ¶ 2, Ex. A (HUD Handbook) §§ 7-11, 7-12.

HUD regulations require "[e]ach member of the family of an assistance applicant or participant who is at least 18 years of age, and each family head and spouse regardless of age, shall sign one or more consent forms."  24 C.F.R. § 5.230(a).The assistance applicant submits consent forms to the proceeding entity at the time eligibility is being determined and at the next regularly scheduled income reexamination. 24 C.F.R. § 5.230(b). These forms are used to verify applications and income and maintain continued Section 8 benefits. 24 C.F.R. § 5.230(c).  Such forms expire fifteen months after the date the form is signed.  *Id.*

To succeed to an apartment as a remaining family member ("RFM") of a tenant family— the process by which a family member can continue to live in an apartment after the head of

household dies or vacates the apartment—the relevant regulations and statutes do not formally enumerate any requirements.  HUD must rely on its Handbook 4350.3 (Occupancy Requirements of Subsidized Multifamily Housing Programs) ("Handbook") for guidance. *See* D56.1 at ¶ 2-4. Weaver Decl. ¶ 2, Ex. A (HUD Handbook).  The Handbook lists the following requirements for a person to qualify as a remaining member:

> 1.   The individual must be a party to the lease when the family member leaves the unit.
>
> 2.   The individual must be of legal contract age under state law.
> . . .

D56.1 at ¶ 21.

The Handbook also provides a waiver provision, stating:

> The procedures in this handbook are presented to ensure that the statutory, regulatory, and contractual obligations regarding HUD-subsidized multifamily housing are fulfilled.  The HUD Multifamily HUB Director, or other designated HUB or Field Office Multifamily Housing Official, may waive directives specified in this handbook only if they are <u>not</u> formally required by statutes or regulation.

D56.1 at ¶ 4.

## II.   <u>BACKGROUND</u>

### A.  <u>Overview of Ms. Greene's Residence in the Subject Apartment</u>

The Deshler Apartments are a project-based Section 8 low-income housing development subsidized by HUD pursuant to 42 U.S.C. §1437(f), and owned by Defendant Deshler Apartment Associates L.P. ("Deshler"). D56.1 at ¶ 13-14. The Defendant United States Department of Housing and Urban Development ("HUD") oversees the project-based Section 8 program. *Id.* at ¶ 1.  Eligible tenants' rent is subsidized at an affordable level by the Section 8 program. *Id.* The

majority of Deshler's "rent roll" comes from Section 8 subsidies that originate with HUD.  P56.1 ¶ 180.

Ms. Greene is an indigent, single mother who has lived at the Deshler Apartments, located at 1871 Adam Clayton Powell Boulevard, New York, N.Y. 10027, for approximately thirty-two years, since she was two years old. D56.1 at ¶ 27-29; P56.1 at ¶¶ 101, 102, 181.  In or about 1982, Ms. Greene moved to the Deshler Apartments with her mother Dawn Lawless. P56.1 at ¶¶ 181-82.  When Ms. Greene's brothers and sisters were born and the family size increased, the family moved to a two-bedroom unit, and subsequently a three-bedroom unit. D56.1 at ¶ 29-30. Currently, Ms. Greene and her infant daughter, born in October 2014, reside in a one-bedroom unit at the Deshler Apartments.  P56.1 at ¶ 102.

In or about late 2010, Dawn Lawless's mother became chronically ill, and Ms. Lawless spent increasingly more time to visit and care for her. P56.1 at ¶ 125.  In or about 2012, Ms. Lawless left the Deshler Apartments, and moved in with her mother on a permanent basis. D56.1 at ¶ 82.

In 2012, Ms. Greene learned that her mother had previously removed her from the annual household composition without her knowledge or consent. P56.1 at ¶ 122. In the spring of 2012, Ms. Greene submitted a recertification package to the Deshler management office, listing herself as head of household and indicating that her sister Cheyenne Greene, then age 17, was still in occupancy of the apartment. D56.1 at ¶ 87; P56.1 at ¶ 126.  The recertification package Ms. Greene submitted included a notarized letter from Dawn Lawless requesting that Ms. Greene be "put back on the lease" as head of household, and indicating that Ms. Greene would care for her sister Cheyenne Greene. P56.1 at ¶ 127.

Because her name was not listed on the most recent household composition, Deshler refused to recognize Ms. Greene as a tenant and to seek continuation of the family's Section 8 subsidy with Ms. Greene as a remaining member of the tenant family. D56.1 at¶ 89; P56.1 at ¶ 144, 154, 156, 172. Subsequently, Deshler sued Ms. Greene in a Housing Court holdover proceeding. D56.1 at ¶ 90; P56.1 at ¶ 142-144. The Housing Court found that Ms. Greene proved that she had continuously resided in the apartment with her mother, and that she was the lawful tenant.  D56.1 at ¶90-91; P56.1 at ¶ 142-144.

## B. <u>Ms. Greene's Improper Removal from the Section 8 Household Composition</u>

### i. Deshler's Duty to Collect Accurate Household Composition Information

Pursuant to 42 U.S.C. §1437f(b)(1), Defendant HUD has the authority to enter into annual contracts to make housing assistance payments ("HAP") to owners of existing dwelling units for the benefit of eligible families. Defendant HUD has promulgated regulations which requires owners to determine an applicant family's eligibility to receive a subsidy and once they have been admitted to the program, requires the owner to reexamine the family's income and composition at least annually. 24 C.F.R. § 880.603. After being found eligible, tenants are eligible to receive the subsidy for as long as they continue to meet eligibility criteria. 24 C.F.R. §§ 880.603(c)(3), 880.607.

The HUD Handbook and federal regulations set forth the duties of the project-based Section 8 building owner to monitor the composition and income of the tenant family in receipt of Section 8 assistance. Owners are required to perform interim certifications whenever they "receive information concerning a change in the family's income or other circumstances between regularly scheduled reexaminations" and "must consult with the family and make any

adjustments determined to be appropriate." 24 C.F.R. § 880.603(c)(2). The Handbook indicates

that owners are responsible for promptly reviewing and verifying information supplied by

tenants.  Weaver Decl. ¶ 2, Ex. A (HUD Handbook) § 7-11.

Tenant household composition and income information for the recertification process is

compiled in HUD Form-50059 "Owner's Certificate of Compliance with HUD Tenant's

Eligibility and Rent Procedures" (hereinafter "HUD 50059" or "Recertification"), which serves

as a yearly lease addendum. P56.1 at § 103. The HUD Handbook provides that copies of the

form are to be maintained in the tenant file.  *Id.*

Richard Colon, Manhattan North Management Company Inc. (hereinafter "Manhattan

North"), Director of Recertification and Compliance testified that Manhattan North became

Deshler's tenant management company in 2007. *See* D56.1 at ¶ 13; Declaration of Natasha L.

Waglow ("Waglow Decl.") at ¶ 2 & Ex. A (July 30, 2015 Colon Dep. Tr.) at 10:18-25; 15:2-9;

15:15-19.  Mr. Colon testified that as Manhattan North Director, his duties with respect to the

Deshler Apartments include tenant re-certifications, rent increases, "move outs," and serving as

HUD liaison.  P56.1 at ¶ 104; Waglow Decl. at ¶ 2 & Ex. A (July 30, 2015 Colon Dep. Tr.) at

66:20-67:7.

Mr. Colon testified that to remove a person from the household composition, proof of

residence elsewhere and a notarized letter from the individual would be required. P56.1 at ¶ 119;

Waglow Decl. at ¶ 2 & Ex. A (July 30, 2015 Colon Dep. Tr.) at 66:20-67:7. In keeping with the

steps described by Mr. Colon, the HUD Handbook provides guidance on how to verify a family

member has left the apartment, including types of documents which can be requested to establish

that a family member has moved out.

### ii.      Ms. Greene's Removal from the Household Composition

Documents produced by HUD in this action indicate that Ms. Greene was listed on the household composition until 2005, when her mother, the Section 8 Head of Household, removed her from the family composition. P56.1 at ¶ 105-11.

Ms. Greene was unaware that her mother had removed her from the household composition. *Id.* at ¶ 122. She did not give her consent to the removal and was not contacted by Deshler staff for confirmation that she had moved.  *Id.* at ¶ 122, 123. Greene testified that between 2003 and 2011, she continued to pay rent of approximately $200 directly to her mother every month via tendering cash or money orders.  *Id.* at ¶ 111; Waglow Decl. at ¶ 7 & Ex. F (Greene Dep. Tr.) at 59:5–23; 60:15–22. Ms. Greene testified that she paid what her mother told her to pay, and that she was not sure how much the apartment rent was.  P56.1 at ¶ 111-112; Waglow Decl. at ¶ 7 & Ex. F (Greene Dep. Tr.) at 59:5–23; 60:15–61:2.  Ms. Greene's understanding was that her mother then paid the funds to the landlord as part of the total rent. *Id.* at ¶ 113. Ms. Greene also testified that she provided her income information to her mother every year for the annual certification, but her mother always completed the annual certification paperwork herself and returned it to the management office located in the same building as Ms. Greene's apartment. Plaintiff's Response to D56.1 at ¶¶ 48, 115; Waglow Decl. at ¶ 7 & Ex. F (Greene Dep. Tr.) at 54:24–56:-18.

While living at the Deshler Apartments, Ms. Greene recalls going to the management office and signing recertification documents of some kind on about two occasions.  P56.1 at ¶ 115; Declaration of Lonnette Greene ("Greene Decl.") ¶¶ 17–18. She simply signed documents and left, there was no further conversation with management.  P56.1 at ¶ 115; Greene Decl. ¶¶ 17–18.  Other than that, as far as Ms. Greene was aware, it was only her mother who signed the

recertification documents on behalf of her and he family members, and she was never told by anyone from the landlord's management team that she needed to come down to the office to sign paperwork other times over the years.  P56.1 at ¶ 115, 121, 123; Greene Decl. ¶¶ 17.

Documents produced by HUD in this action pinpoint that Ms. Greene was removed from the household composition in 2005.  P56.1 at ¶ 183.  HUD produced copies of the 2003 to 2006 HUD Form-50059 for the Lawless/Greene tenant family, that indicate that Lonnette Greene was a member of the tenant family up until the 2005 recertification.  *Id.*; Weaver Decl. ¶ 5, Ex. D (HUD Form 50059, effective July 1, 2003), ¶ 6, Ex. E (HUD Form 50059, effective July 1, 2004, ¶ 7, Ex. F (HUD Form 50059, effective July 1, 2005).  The 2003 Recertification, effective July 1, 2003, lists as Head of Household Dawn Lawless, with additional household members Lonnette, then 23 years old, and her siblings Courtney, Cary, Cheyenne and Christan [sic] Greene.  P56.1 at ¶ 109; Weaver Decl. ¶ 5 & Ex. D (HUD Form 50059, effective July 1, 2003).  The 2004 Recertification also lists Lonnette Greene, then 24 years old, as a household occupant along with her mother and siblings Courtney, Cary, Cheyenne, and Christan [sic].  P56.1 at ¶ 110; Weaver Decl. ¶ 6 & Ex. E (HUD Form 50059, effective July 1, 2004).  The unsigned HUD Form 50059 effective July 1, 2005 does not list Lonnette Greene, then 25 years old, as a household member, listing only Dawn, Courtney, Cary, Cheyenne and Christan[sic] Greene. P56.1 at ¶¶ 124, 183; Weaver Decl. ¶ 7, Ex. F (HUD Form 50059 effective July 1, 2005).

Ms. Lawless testified that when she removed her daughter Lonnette from the household composition she gave no reason for her request and does not recall being asked for any proof of her daughter's residence elsewhere.  P56.1 at ¶ 120.

The Deshler tenant file produced in this litigation does not include the 2003 to 2006 recertification documents and supporting household composition and income information

documents, creating a genuine issue of material fact as to whether appropriate household

composition and income information was collected from the tenant family, including at the time

Ms. Greene was removed from the household composition.  P56.1 at ¶ 116.  Mr. Colon

erroneously testified that Ms. Greene was "never" on the household composition, apparently

based on the contents of the tenant file. Waglow Decl. at ¶  4, Ex. C (Colon Dep. Tr.) at 149:6–

24.

      Mr. Colon testified that when Manhattan North became Deshler's managing agent in

2007, it received a tenant recertification file from the former management company.  P56.1 at

¶ 117.

      He testified that Deshler was required to keep three years of historical recertification

documents in the tenant file and that Deshler "purged the older stuff".  *Id*. at ¶ 118; Waglow

Decl. ¶ 4 & Ex. C (Colon Dep. Tr.) at 122:12–123:24. Mr. Colon testified that purged

documents were not destroyed, but rather stored at an off-side office in a file cabinet in storage.

P56.1 at ¶ 118; Waglow Decl. ¶ 4 & Ex. C (Colon Dep. Tr.) at 122:12–123:24.

      Mr. Colon testified that the entire tenant file for the Lawless/Greene family including the

documents in storage were produced to Plaintiff in the litigation:

> With storage, the recertification, it's a physical storage file. See,
> we did you a special favor by pulling out all the old refiles for you
> so we have it here. All the other tenant files are in storage.

Waglow Decl. ¶ 4 & Ex. C (Colon Dep. Tr.) at 124:13–123:18.

      While Mr. Colon's testimony suggests that the Lawless/Greene tenant file should contain

re-certification documents going back to at least 2004 (three years prior to 2007), the tenant file

is an incomplete record and does not contain such documents.  P56.1 at ¶ 116.  The tenant file

contains a spotty array of documents including documents from the initial move-in period in

1982, and various recertification and apartment inspection documents from 2007 to present. *See, e.g.,* P56.1 at ¶ 116, 135, 182; Weaver Decl. ¶ 17.

Mr. Colon testified that for the tenant family's 2007 HUD Form 50059, Dawn Lawless, and Courtney, Cary, Cheyenne and Christian Greene were listed on the household composition because "when we acquired the building in 2007, they were listed on the recertification already." D56.1 at¶ 62. From that point forward Ms. Greene was no longer listed on the family composition although she continued to openly reside in the apartment. P56.1 at ¶ 183.

### C.  Ms. Lawless's Attempts to Restore Ms. Greene to the Household Composition

Ms. Lawless testified that in or about 2008, she went to the management office and requested that Ms. Greene be put back on the household composition, but her request was denied.  P56.1 at ¶ 130; Waglow Decl. at ¶ 9 & Ex. G (Lawless Dep. Tr.) at 9:22–10:4, 20:21–21:13.

Mr. Colon testified that the protocol for a person removed from the household composition to be added back would be submission of a notarized letter from the head of household, and submission of documents such as birth certificates, social security cards, photo ID, and proof of income and for the owner to then do a full background check. P56.1 at ¶ 57; Waglow Decl. at¶ 2 & Ex. A (July 30, 2015 Colon Dep. Tr.) at 58:8-59:16.  Mr. Colon additionally testified "[w]e want to make sure they are not living in the household and so on" Waglow Decl. at¶ 2 & Ex. A (July 30, 2015 Colon Dep. Tr.) at 58:8-59:13. Mr. Colon's testimony suggests that Deshler would not permit an adult situated similarly to Ms. Greene— previously removed from the household without her consent who remained in residence there— to be added back to the household composition.

Ms. Lawless testified that she was told that once a family member was removed from the lease, they could not be re-added to the lease. P56.1 at ¶ 130; Waglow Decl. at ¶ 9 & Ex. G (Lawless Dep. Tr.) at 9:22–10:4, 20:21–21:13. Ms. Lawless believed this not to be true, as she knew of other tenants who had removed a child from the lease, and later the child was re-added to the lease. P56.1 at ¶ 129.

Yet Mr. Colon testified that Deshler would entertain a tenant's request to be restored to the household composition based on the circumstances and that there was no general policy:

> Thats up to the family, whatever their reason. Usually we base it more on the background check, if there's room in the apartment, the background checks, and – a reason – if there's a minor child, and let's say their child is coming from another country, which we have that, so they request that they move in.
> So that's something we take into consideration. Each case is individual. We take it individually. I don't have a specific general answer for everyone."

P56.1 at ¶ 128; Waglow Decl. at ¶ 4 & Ex. C (Colon Dep. Tr.) at 129:17-130:16.

101.   Ms. Lawless repeated her request to restore her daughter to the household composition every year for several years and brought all necessary documentation to the office at the time of recertification, including documentation of her daughter's identity and income to support her request to have her daughter added to the household. P56.1 at ¶ 131. Ms. Lawless testified that she directed her complaints to Deshler management, and that she did not know that she could complain to HUD or to the contract administrator that Deshler refused to add Lonnette Greene back to the lease.  *Id.* at 132-133; Waglow Decl. at ¶ 9 & Ex. G (Lawless Dep. Tr.) at 56:22–57:11.

The facts, including the Housing Court's succession decision, support a finding or at least a factual dispute regarding Deshler's awareness that Ms. Greene continued to live in the apartment after she was removed from the household composition.  *See* P56.1 at ¶ 143.

Ms. Lawless testified as follows as to management's awareness of Ms. Greene's presence in the building:

> Management knew she was living in that apartment with me. When they didn't let her go back on the lease they knew she was living there. They saw her every single day. Every day they saw her. So I don't see what the point of this is when they knew that girl was still living in that apartment and living with me.

P56.1 at ¶ 134; Waglow Decl. ¶ 9 & Ex. G (Lawless Dep. Tr.) at 30:17–24; Greene Decl. ¶ 19.

Deshler was also aware that she lived there because Ms. Greene gave access for repairs and the annual apartment inspections which the management office employees conducted throughout her tenancy. P56.1 at ¶ 134-135. The tenant file contains an October 2008 work order inspection for the apartment signed by Ms. Greene and Site Manager Joy Rosado. *Id.* at ¶ 135.

Documents in the Deshler file demonstrate that Ms. Greene was an original long-term member of the tenant family which renders unreasonable Deshler's refusal to entertain Ms. Lawless's requests to re-add Ms. Greene to the household composition. P.56.1 at ¶¶ 107-110, 135. The Deshler file includes the initial lease, signed by Dawn Lawless in 1982 and associated move-in documents that list Dawn and Lonnette as the original household members. *Id.* at ¶ 182. The tenant file includes a page of photocopied social security cards for Dawn and her five children including Lonnette Greene from 1997 or later as well as a copy of her birth certificate. P 56.1 at ¶ 107. A 1999 tenant declaration signed by Lonnette Greene then 19 years old is contained in the tenant file. P56.1 at ¶ 108. As noted above, the Deshler does not contain the recertification documents showing that Lonnette was a recognized member of the tenant family through 2004. P56.1 at ¶ 116.

### D.  Ms. Greene's Lack of Recourse to Challenge the Loss of the Subsidy

At several points in time, Ms. Greene attempted to challenge, *pro se*, her improper removal from the household composition:  with Deshler in 2012, and in 2013 with HUD directly by appearing at HUD's offices, and over the telephone with HUD's contract administrator CGI. P56.1 at ¶¶ 146-149.

As set forth more fully in section I(D)(iv) *infra*, the testimony of Christine El Shahat, HUD Senior Project Manager, suggests that HUD acknowledges that Ms. Greene *should have had recourse* to challenge her improper removal from  the household composition.  P56.1 at ¶ 159.

Yet, at no time did Defendant HUD serve Ms. Greene or Ms. Lawless with any notice indicating that they were no longer entitled to the subsidized rent, that Defendant Deshler intended to raise the rent of the apartment to fair market level, or that Defendant HUD refused to restore Ms. Greene to the income certification and pay the Section 8 subsidy attached to her unit, nor were any such notices served by Deshler. *See* P56.1 at ¶ 137-140, 153-154, 173.

Neither Defendant HUD nor Defendant Deshler ever gave Ms. Greene or Ms. Lawless notice that there was any problem with the annual certifications for the apartment, asked them to give additional information related to the household income and/or composition, any opportunity to cure any defects in the certification materials submitted to Deshler during the annual recertification process. *See* P56.1 at ¶¶ 121-123.

### i.  Ms. Greene's Initial, 2012 Efforts to Seek Continuation of the Section 8 Subsidy

As set forth more fully in Section I(A), *infra*, in the spring of 2012, Ms. Greene prepared a recertification package and submitted it to the Deshler management office, so that she could become a recognized tenant and head of household. *See* P56.1 at ¶ 126.

As noted above, Mr. Colon erroneously testified that he refused to allow Ms. Greene to recertify because "she was never listed in the household." Waglow Decl. at ¶ 4 & Ex. C (Colon Dep. Tr.) at 149:6-24. Ms. Greene was not given written notice of Deshler's decision or the basis of its decision, nor was she advised how to challenge the decision with Deshler or HUD. P56.1 at ¶¶ 121-123.

William Carrington, HUD Senior Project Manager, testified that to terminate a subsidy, an owner must notify the resident by letter and specify the reason for the termination, and what the tenant can do to appeal. P56.1 at ¶ 139; Waglow Decl. ¶ 5 & Ex. D (Carrington Dep. Tr.) at 8:20–25, 50:17–51:19.  He testified that when rent is to be raised to market rate, a letter notifying a tenant of the new market rate rent and when it will go into effect must be issues.  P56.1 at ¶ 140; Waglow Decl. at ¶ 5 & Ex. D (Carrington Dep. Tr.) at 59:23–60:18. If a tenant failed to report a change in income, he testified that the owner may terminate the section 8 contract. *See* P56.1 at ¶ 8; Waglow Decl. at ¶ 5 & Ex. D (Carrington Dep. Tr.) at 49:24-50:7. Mr. Carrington testified that the owner must notify the resident in a letter, state the date the Section 8 contract is being terminated, the reason why, and instructions for appeal. P56.1 at ¶ 139; Waglow Decl. ¶ 5 & Ex. D (Carrington Dep. Tr.) at  50:17–51:19.

As noted above, no such notices were issued to Ms. Greene or to Ms. Lawless. *See* P56.1 at ¶¶ 121-123.

ii.    **Ms. Greene's Continued Attempts to Achieve Continuation of the Subsidy in 2013**

16

In 2012, Deshler commenced a licensee holdover proceeding against Ms. Greene to evict her from the apartment. P56.1 at ¶ 90. During the case, Ms. Greene paid rent to Deshler at the amount that had been charged to her mother, Dawn Lawless. P56.1 at ¶ 141. Ms. Greene represented herself *pro se*, and the case proceeded to trial. *Id.* at ¶ 142.

In March 2013, Ms. Greene received the court decision which set forth that she had established continuous residency in the apartment and lawful successor to Ms. Lawless; however, the court did not decide the issue of whether she was entitled to the Section 8 subsidy. P56.1 at ¶¶ 143-145.

When Ms. Greene received the decision in the mail from the Court, she immediately went down to the management office to discuss next steps. P56.1 at ¶ 143-144.  Ms. Greene was offered a market rate lease for the apartment to sign. *Id.* at ¶ 144.  Ms. Greene refused to sign the lease. *Id.*

Ms. Greene promptly went to speak with the housing judge who issued the decision to determine what her rights were; the judge advised Ms. Greene that he could not require her landlord or HUD to continue the subsidy, and that she should take it up with HUD directly. *Id.* at ¶ 145.

Ms. Greene next went to the HUD office at 26 Federal Plaza to ask about her Section 8 subsidy.  *Id.* at ¶  146. She was greeted by two female HUD employees who read her housing decision and thought she should get the subsidy. *Id.* at ¶ 146-147. Ms. Greene was advised to wait for an employee named "William" because he supervises the Deshler Apartments. *Id.*. However, Ms. Greene was told that "William" could not see her that day.  *Id.*  Instead, Ms. Greene was given a note with CGI Inc.'s phone number and asked to call that number about her matter. *Id.* at ¶ 148. Ms. Greene immediately called CGI, explained her situation, and was told by

CGI that they could not continue the Section 8 subsidy on her behalf because she was not a signatory on the last lease. *Id.* at ¶ 149.

CGI Federal (hereinafter "CGI) has been the subcontractor for HUD's contract administrator NY State Housing Trust Fund for approximately ten years. D56.1 at ¶ 23-24. CGI's responsibilities are to process Section 8 contract renewal and rental adjustment paperwork, and maintains a tenant call center for tenancy issues. *Id.* Jeff VanLoan, New York State Manager for CGI Federal, testified that with respect to the Deshler Apartments, CGI's duties were to process Deshler's monthly housing assistance payment vouchers, to process periodic contract renewal and rental adjustment paperwork, and to field tenant calls made to the contract center. P56.1 at ¶ 184. Mr. VanLoan testified that tenants were made aware of the tenant call center information because a sign is supposed to be posted at each property. D56.1 at ¶ 54; Waglow Decl. at ¶ 4 & Ex. C (Aug. 20, 2015 Colon Dep. Tr.) at 155:21-157:17.

Mr. VanLoan testified that CGI until September 2011, CGI performed management and occupancy reviews ("MOR") for HUD for the Deshler properties, until the process was stopped at HUD's request. P56.1 at ¶ 151; Waglow Decl. ¶ 6 & Ex. E (VanLoan Dep. Tr.) at 33:7–25, 37:24–38:13. The MOR involved a site visit where CGI was supposed to verify whether the contact information for the call center for tenant complaints was conspicuously posted at the property in question. *Id.*

Mr. VanLoan testified that a search of calls from Deshler tenants was performed, and that CGI had no record of a complaint from Ms. Greene or a complaint regarding Deshler's failure to add a family member to the household composition. D56.1 at ¶ 55. However, Ms. Greene did make such a telephone call at the bequest of HUD. P56.1 at ¶ 149.

### iii.   Deshler's Request to HUD for Continuation of the Subsidy on Ms. Greene's Behalf

In 2013, Deshler brought a nonpayment proceeding against Ms. Greene in Housing Court to recover the amount of the fair market rent since her mother had surrendered the apartment. Amended Complaint at ¶ 67. The proceeding was ultimately dismissed for Deshler's failure to show that Ms. Green had entered an agreement with Deshler to pay such rent. *Id.*

Rita Rizzo, counsel for Deshler, told Ms. McCune that Deshler did not have an issue with certifying Ms. Greene for the Section 8 subsidy retroactively and in fact she had contacted HUD about the retroactive certification but that HUD refused. P56.1 at ¶ 153.  Ms. McCune testified that Ms. Rizzo told her with respect to HUD's rationale for the decision that it was "unclear" and not "not helpful to owners or tenants." *Id*. at ¶ 154; Waglow Decl. at ¶ 25 & Ex. X (McCune Dep. Tr.) at 10:9–23.  Ms. McCune testified that she did not know if Ms. Rizzo's communication with HUD regarding continuation of the subsidy on Ms. Greene's behalf was oral, or in writing. P56.1 at ¶ 155; Waglow Decl. at ¶ 25 & Ex. X (McCune Dep. Tr.) at 28: 23–29:3.

No notice was provided to Ms. Greene by HUD or Deshler of this decision.  Weaver Decl. ¶¶ 20–21.

### iv.   HUD's Testimony Support a Finding that a Tenant Improperly Removed from the Household Composition is Entitled to Due Process

The testimony of HUD witness Christine El Shahat indicates that contrary to HUD's current position that Ms. Greene was entitled to no due process from HUD with respect to her removal from the household composition, a tenant is entitled to an opportunity to present evidence to the Section 8 landlord if they believe they were removed improperly, and that HUD was obligated to conduct a further investigation as to such allegations.

Ms. El Shahat testified that if a tenant was improperly removed from the household composition "it's up to the tenant to take that up with management agent to show they were improperly removed.  They would have to prove that." P56.1 at ¶ 157; Waglow Decl. ¶ 3 & Ex. B (El Shahat Dep. Tr.) at 22:17–23.  Ms. El Shahat further testified that the building managing agent was "the first line of contact" and that "they can always contact HUD." P56.1 at ¶ 158.

Ms. El Shahat testified that if a tenant brought a claim of an improper removal from the household composition to HUD's attention, HUD would investigate the matter and take additional steps, although she was not aware what steps would be taken:

> Q. If a particular project improperly removes a tenant from the lease or the household composition, would HUD allow a subsidy to continue for a person improperly removed from the household composition?
>    Ms. Waglow: Objection.
> A.  I can't answer on something that I have no experience with.
> Q. <u>How would you determine this issue if it comes before you</u>?
> A. <u>They would have to provide some kind of evidence</u>.
> Q. <u>Evidence of what</u>?
> A. <u>Evidence that they were improperly removed from the lease</u>.
> Q. Once this person provides such documentation, what would be HUD's next steps?
> A. <u>We would have to research it</u>. That would be the next step, the researching.
> Q. After this research or investigation piece is completed, and it shows that this person was improperly removed, what would be HUD's next step?
> A. I can't answer on something that I don't have knowledge of.
> Q. What kind of research would you do; would it be legal research, policy research?
> A. It would all depend on what is submitted to us, what type of documentation. Again, it would all – it all goes on what's submitted. So I can't comment on something that I don't have.

P56.1 at ¶ 159; Waglow Decl. at . ¶ 3 & Ex. B (El Shahat Dep. Tr.) at 23:3–25:22.

William Carrington, HUD's 30(b)(6) witness in this matter, testified that he was unaware of any procedures for a HUD tenant to challenge a failure of an owner to grant a request to add somebody to a family composition. P56.1 at ¶ 160.

### E.  The HUD Handbook "Waiver" Provision

Ms. Greene was unsuccessful in obtaining an opportunity to be heard with respect to her removal from the household composition.  Once Ms. Greene obtained counsel to represent her in the second holdover proceeding brought by Deshler, Ms. Greene continued to seek assistance from HUD in the form of requesting that HUD exercise the HUD Handbook "waiver" provision on her behalf.  P56.1 at ¶ 167.

The HUD Handbook states that any requirements in the Handbook which are not found in the federal regulations may be waived by HUD:

> The procedures in this Handbook are presented to ensure that the statutory, regulatory, and contractual obligations regarding HUD subsidized multi-family housing are fulfilled. The HUD multifamily HUD director or other designated HUD or field office multi-family housing official may waive directives specified in this handbook only if they are not formally required by statute of regulation.

D56.1 at ¶ 4.

The HUD Handbook states that in order to qualify as a remaining family member, the remaining family member must be a "party to the lease when the family member leaves the unit." *Id.* at ¶21. Deshler relied upon this provision to refuse to restore Ms. Greene to the household composition and to seek continuation of the subsidy on her behalf. HUD ratified Deshler's decision and denied Ms. Greene continuation of the subsidy based on this provision. P56.1 at ¶ 172.

Neither 42 U.S.C. §1437a, 42 U.S.C. §1437f, nor their implementing regulations contained in 24 C.F.R. § 880 *et seq.* require family members to be lease signatories in order to be considered a remaining family member. At her deposition, Ms. El Shahat acknowledged that she was not aware of a requirement beyond the HUD Handbook that a remaining family member be a party to the last lease.  P56.1 at ¶ 185.

21

As such, Ms. Greene's request to relax this provision and permit her to succeed to the subsidy based on the totality of the circumstances is a proper basis for a waiver request.

## F.  **HUD's Denial of Ms. Greene's Waiver Request**

During a December 2013 conference call between representatives for Ms. Greene, HUD and Deshler, Ms. Greene's made a waiver request to HUD via her counsel Mary McCune. P56.1 at ¶ 167.

Ms. Rizzo represented to Ms. McCune that she would arrange for a conference call with the HUD representative with authority to decide the subsidy issue for Ms. Greene's situation. *Id.* at ¶ 161. This call occurred in December 2013, with participants Ms. Rizzo, Ms. McCune, Richard Colon for Deshler's management company Manhattan North Management Company, Inc., and HUD representative Christine El Shahat. *Id.* at 162.

During the call, Ms. McCune addressed the fact that Ms. Greene has a right to succeed to the section 8 subsidy and that  Ms. Greene grew up in the Deshler Apartments and was unaware she was taken off the household recertifications. *Id.* at ¶ 163-165. Rather, Ms. Greene discovered she was removed from the household recertifications because her mother, Dawn Lawless, had informed her at a later time. *Id.* at ¶¶ 122,  163. Ms. Lawless also informed Ms. Greene that she had tried to add Ms. Greene back to the household composition but her requests were denied despite Ms. Greene's continuous tenancy. *Id.* at ¶ 164. Ms. McCune pointed to the fact that Manhattan North knew of Ms. Greene's continuous tenancy at Deshler because Ms. Greene had let inspectors into the apartment to conduct inspections and it had an office in the Building and saw Ms. Greene regularly go in and out. *Id.* at ¶ 165.

In response, Ms. El Shahat referenced to federal regulations that are no longer in force, on the definition of qualified tenants. *Id.* at ¶ 166. Furthermore, Ms. El Shahat could not provide

the actual definition to Ms. McCune.  *Id.*  Because the discussion appeared to come to a standstill, Ms. McCune began to discuss invoking the waiver provision in the HUD Handbook with respect to the requirement that a remaining family member can only succeed to the subsidy if that person was a signatory on the last lease. *Id.* at 168. The waiver provision can effectively do away with that requirement because it is not found in the governing regulations or statutes and Ms. Greene is the kind of person that the Section 8 program was designed to assist.  D56.1 at ¶ 4; P56.1 at ¶ 167-168.

Mr. Colon expressed that he did not want the waiver to be applied.  P56.1 at ¶ 169.

Ms. El Shahat then brought up HUD's interest in favor of filling the waiting list, to which Ms. McCune responded that if the subsidy is not continued, Ms. Greene would in effect be made to go back onto the waiting list, which seems counterproductive to the program's mission and purpose. *Id.* at ¶ 170-171. McCune referenced documentation that support Ms. Greene's position but she was never requested to provide them to HUD. *Id.* at ¶ 171, 179.  At the end of the conference call, Ms. El Shahat stated that she refused to grant the waiver to Ms. Greene. *Id.* at ¶ 172. Ms. El Shahat believed Ms. Greene did not meet the definition of a qualified tenant but could not explain the basis for this conclusion. *Id.* at ¶ 173.

However, contrary to Ms. El Shahat's position, Ms. Greene meets the criteria for a qualified tenant contained in 24 C.F.R. § 236.2 Subpart A in the 1995 edition of the C.F.R. because she earns less than eighty percent of the current area median income. *Id.* at ¶101. Ms. Greene meets the definition of eligible family member in a project-based Section 8 building contained in 24 C.F.R. § 5.403, which includes single persons or remaining members of a tenant family. *Id.*

Ms. El Shahat testified that she did not recollect the conversation between Ms. McCune, Deshler, and herself regarding the continuation of the Lonnette Greene Section 8 subsidy, nor did she recall any specific conversations with Deshler or its managing agent. Waglow Decl. at ¶ 3, Ex. B (Shahat Dep. Tr.) at 47:6-48:7, 49:2-4.

Ms. El Shahat testified that she had seen the waiver provision in the HUD handbook, and that her understanding of the provision was that "whoever is party to the handbook can request waivers of certain regulations." P56.1 at ¶ 174; Waglow Decl. ¶ 3 & Ex. B (El Shahat Dep. Tr.) at 27:11–28:2.  She testified that she had never seen a waiver request, and was not aware of anyone at HUD applying the provision. P56.1 at ¶ 175; Waglow Decl. ¶ 3 & Ex. B (El Shahat Dep. Tr.) at 28:11–29:8.

Despite her professed lack of knowledge or experience with respect to waiver requests, Ms. El Shahat surmised at the deposition that a waiver request could go to the legal department and that it would have to be submitted in writing. P56.1 at ¶ 176-177. As to the authority to grant a waiver request, Ms. El Shahat testified: "Ultimately, the approval would come from the HUD Director, but depending on the actual waiver request it could be other steps. It may go to our legal department first. But the HUD director signs off on the approval." *Id.*; Waglow Decl. at ¶ 3 & Ex. B (El Shahat Dep. Tr.) at 31:3–8.  Ms. El Shahat further testified that a waiver request would have to be submitted in writing with supporting documentation but cannot testify to any other criteria that is required for the waiver to be granted.  P56.1 at ¶ 177

William Carrington, HUD Senior Project Manager, testified that he was not aware of HUD every applying the provision to a tenant, and that he was not aware of any criteria for granting the waiver provision, administrative remedies for failure or procedures to challenge the

failure to grant a waiver.  Plaintiff's Response to D56.1 at ¶ 5; Waglow Decl., ¶ 5 & Ex D

(Carrington Dep. Tr.) 68:1-70:18.

During the conference, Ms. McCune was not told that the waiver request needed to be

submitted in writing, or with supporting documents. P56.1 at ¶ 179. HUD presents no supporting

documentation, policy memoranda or the like to support its position that a waiver request must

be in writing. *See* Plaintiff's Response to D56.1 at ¶ 5.

## ARGUMENT

### I.      LEGAL STANDARD

Summary judgment is only appropriate if the pleadings, discovery materials submitted

before the Court, and any affidavits show that there is no genuine issue of material fact and the

movant is clearly entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c); *Celotex Corp. v.

Catrett*, 477 U.S. 317, 322 (1986).  An issue is a genuine material fact where, the record taken as

a whole, could lead a rational trier of fact to find for the non-movant.  *Fabrikant v. French*, 691

F.3d 193, 205 (2d Cir. 2012) (citation omitted).  The Court "is not to resolve disputed issues of

fact but to assess whether there are any factual issues to be tried."  *Wilson v. Nw. Mut. Ins. Co.*,

625 F.3d 54, 60 (2d Cir. 2010) (citation omitted).  The burden resides with the movant to

establish the absence of any genuine issue of material fact.  *Zalaski v. City of Bridgeport Police

Dep't*, 613 F.3d 336, 340 (2d Cir. 2010).  All ambiguities and permissible factual inferences are

drawn in favor of the non-movant.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986);

*Nagle v. Marron*, 663 F.3d 100, 105 (2d Cir. 2011).  Where there is any evidence from which a

reasonable inference could be drawn in favor of the opposing party, summary judgment is

improper.  *See Sec. Ins. Co. of Hartford v. Old Dominion Freight Line Inc.*, 391 F.3d 77, 83 (2d

Cir. 2004).

## II.   DISPUTED MATERIAL FACTS EXIST CONCERNING MS. GREENE'S DUE PROCESS CLAIMS

### A.   Ms. Greene Has a Constitutionally Cognizable Property Interest in Continuation of the Section 8 Subsidy

HUD argues in its Rule 56 motion that Ms. Greene did not state due process claims because she has no protected property interest in the Section 8 subsidy at issue.  Def. Mot. (Dkt. No. 55) at 18.  Yet, numerous federal courts have held that applicants for Section 8 subsidized apartments do have such a protected property interest, and Ms. Greene has thus sufficiently alleged due process claims against HUD in this action.

Procedural due process constrains government actions that threaten the enjoyment of "liberty" or "property" interests within the meaning of the Due Process Clause of the Fifth Amendment.  *Mathews v. Eldridge*, 424 U.S. 319, 332 (1976).  To resolve a procedural due process claim, the Court undertakes a two-step analysis of:  (i) the threshold issue of whether the plaintiff has asserted a property interest protected by the Constitution; and (ii) whether the defendant deprived the plaintiff of that interest without due process.  *Strong v. Board of Educ. of Uniondale Union Free School Dist.,* 902 F.2d 208, 211 (2d Cir. 1990), *cert. denied,* 498 U.S. 897 (1990); *Narumanchi v. Board of Trustees of Connecticut State University,* 850 F.2d 70, 72 (2d Cir. 1988).

The continued receipt of government benefits is a statutorily created "property" interest protected by the Fifth Amendment.  *Mathews*, 424 U.S. at 332.  In a variety of contexts, federal courts have found that applicants for government benefits who are not in current receipt of said benefits have a protectable property interest warranting procedural due process protections.  *See e.g. Vandermark v. Housing Authority of City of York,* 663 F.2d 436 (3d Cir. 1981) (applicant for Section 8 benefits stated due process claim); *Kelly v. Railroad Retirement Board,* 625 F.2d 486

(3d Cir. 1980) (applicant for disabled child's annuity under Railroad Retirement Act); *Raper v. Lucey,* 488 F.2d 748 (1st Cir. 1973) (applicant for driver's license); *Butland v. Bowen,* 673 F. Supp. 638 (D. Mass. 1987) (applicant for Social Security disability benefits).

In *Ressler v. Pierce*, the plaintiffs were a class of applicants and potential applicants for HUD Section 8 rent subsidies who claimed they were denied due process and equal protection by HUD and the apartment owners due to the manner in which their applications for Section 8 assistance were processed.  692 F.2d 1212, 1213–14 (9th Cir. 1982).  Plaintiff Margaret Ressler was a resident of the Jewel Lake Villa apartments in Anchorage, Alaska.  As a low-income person, she was Section 8 eligible.  Ressler asked her apartment complex owner about the Section 8 rent subsidies being offered and was told that none were available.  She was not given a written application, nor was she put on a waiting list, but simply notified that if any Section 8 benefits became available she would be notified.  The district court held that the threshold issue of a protectable property interest was satisfied.  *Id.* at 1214.

On appeal, HUD argued that there was no protectable property interest given project owner's discretion to select among qualified applications.  *Ressler*, 692 F.2d at 1214–15.  The Ninth Circuit Court of Appeals upheld, *inter alia*, the lower court's finding on the grounds that Ressler was a prospective "primary beneficiary" of the Section 8 program, and her receipt of benefits was subject to close monitoring by HUD.  Thus she had a sufficient "property" interest to entitle her to due process safeguards in the processing of her application and meaningful review of her application.  *Id.* at 1216.

In *Watson v. U.S. Dep't of Hous. & Urban Dev*., the court held that HUD failed to provide due process in terminating Section 8 assistance to plaintiff Watson, who claimed to be eligible based on disability.  645 F. Supp. 345, 351 (S.D. Ohio 1986).  Plaintiffs were three men

living in an apartment complex subsided by the Section 8 program.  After living there for several months, a HUD routine check resulted in finding that they had been improperly approved, resulting in overpayments by HUD to the owner.  The owner wrote to the tenants, demanding proof of their eligibility within seven days since HUD was demanding reimbursement for the overpayments. Plaintiffs challenged the owners and HUD's actions as violative of due process. The court held that Plaintiff Watson, who asserted that he had a qualifying disability that rendered him eligible for the housing, was entitled to due process under the *Goldberg v. Kelly* standard.  *Waston*, 645 F. Supp. at 347.  The Court distinguished Watson from the other two plaintiffs, single adult males who sought an "exception to the statutory scheme limiting participation to well-defined eligibility categories" in this instance, the elderly, disabled, and handicapped.

HUD argues in its moving papers that Ms. Greene's desire for an "exception" renders her like the plaintiffs whose due process claims were dismissed in *Watson*.  Def. Mot. at 31. However, Ms. Greene meets a "well-defined eligibility category" for the Project-Based Section 8 assistance in question: she earns less than eighty percent of the current area median income and she meets the definition of eligible family member in a project-based Section 8 building contained in 24 C.F.R. § 5.403, which includes single persons or remaining members of a tenant family.  Am. Compl. ¶¶ 86, 87.  As such, she is similarly situated to plaintiff Watson and should have an opportunity to prove her entitlement to the benefit in question with adequate process afforded her.

Federal courts have also held that potential participants in public housing authority ("PHA") programs have a protectable property interest entitling them to a hearing with due process protections upon rejection of their applications.  In *Davis v. Mansfield Metro. Hous.*

28

*Auth.*, the defendant PHA had a policy of refusing to grant certificates of eligibility to participate in the Section 8 PHA program to persons against whom there was an outstanding claim for damages to rental property or for unpaid rent—even when the potential participant disputed the claim.  751 F.2d 180 (6th Cir. 1984).  The Sixth Circuit Court of Appeals held, *inter alia*, that the applicants had a protected property interest requiring an informal hearing.  *Davis*, 751 F.2d at 183.  In *Neddo v. Hous. Auth. of City of Milwaukee*, the PHA policy at issue denied admittance to an applicant who was in arrears for rent in connection with a previous public housing occupancy, with no opportunity for her to present her own evidence. The court held that the policy had the "fatal flaw of inflexibility" and thus required an informal hearing for the applicant upon written notice.  335 F. Supp. 1397, 1400 (E.D. Wis. 1971).

In *Baldwin v. Hous. Auth. of City of Camden*, the New Jersey District Court considered plaintiff applicant's challenge to the defendant PHA's use of creditworthiness to evaluate her Section 8 application.  278 F. Supp. 2d 365 (D.N.J. 2003).  The court rejected the defendant PHA's argument that, as a mere applicant, the plaintiff had no protected property interest. The court held that the plaintiff adequately stated a claim for violation of procedural due process inasmuch as she asserted and could potentially show that the review by the PHA of the applicant's credit history did not comply with implementing regulations.  278 F. Supp. 2d at 386.

Ms. Greene's long-term open residence in the subject apartment as a member of the Section 8 tenant family and her allegations that she was improperly removed from the household composition without her consent renders her property interest in continuation of the Section 8 entitlement more weighty that the interest of the plaintiffs-applicants in the *Ressler*, *Watson*, and *Davis* cases *supra*.  P56.1 at ¶ 50, 121-126. *Cf. Washington v. Los Angeles Second Baptist Homes, Inc.*, No. CV 13-2187 MMM FFM, 2014 WL 2197757, at *7 (C.D. Cal. May 24, 2014)

(involving a plaintiff who had only lived in the premises for three years prior to his request for RFM recognition and without any allegations that his absence on the household recertifications was improper).  Ms. Greene's expectation of being awarded a subsidy was greater than that of a mere applicant on a waiting list because she had formerly received the subsidy as part of her mother's household, was eligible to continue receiving it as the remaining member of the tenant household, pursuant to the statutory policy of preventing displacement of low income families following vacatur of the tenant of record. D56.1 at ¶ 27, 12, 20-21, 46-48; 42 U.S.C. §§ 1437a, 1437f, 1441, 1441(a); 24 C.F.R. § 880.101.

HUD mischaracterizes the holding of *Evans v. Franco*, 93 N.Y.2d 823 (1999), a New York Court of Appeals case, asserting that the holding was that "no due process protection is warranted where a party seeks to claim status as a remaining member of a tenant family, despite not being listed on the household composition or contributing income for the subsidy calculation." Def. Mot. at 20.  Rather, the Court held that under the facts as presented of the plaintiff living in the NYCHA apartment for 13 years without being reported by the deceased as an occupant, there was no basis to find that the plaintiff was entitled to continuation of the subsidy.  *Id*. at 825.  Contrary to HUD's characterization, the court did not indicate whether it found that plaintiff to have a protectable property interest or whether it found the due process procedures afforded adequate.

Accordingly, because Ms. Greene's has shown issues of fact involving her due process claims, HUD's summary judgment motion should be denied.

### B.  HUD Denied Ms. Greene Continuation of the Section 8 Subsidy Without Adequate Due Process

While HUD fails to address the other elements of Ms. Greene's due process claims, the facts amply support a finding that HUD did not provide adequate notice and process to Ms. Greene in this case.

The Supreme Court has held that to resolve whether a particular instance comports with due process, a flexible analysis of three distinct factors is necessary: (i) the private interest that will be affected by the official action; (ii) the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and (iii) the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.  *See Goldberg v. Kelly,* 397 U.S. 254, 263–71 (1970); *Mathews*, 424 U.S. at 334–35.

HUD's motion should be denied since, in addition to satisfying the threshold issue of a protectable property interest, Ms. Greene adequately describes how, at numerous points in time, HUD afforded no notice, opportunity to be heard, or means to challenge the decisions by Deshler and HUD improperly removing her from the household composition, refusing to add her back to the household composition and denying continuation of the Section 8 subsidy in her name. P56.1 at ¶¶ 123,137-140, 173. As set forth more fully herein, given these procedural deprivations, the *Goldberg v. Kelly* factors weigh strongly in favor of Ms. Greene.

In or about 2005, when Ms. Lawless requested that Deshler remove Ms. Greene from the household composition, she was not asked to supply supporting documentation, and Deshler did not take any steps to verify the veracity of Ms. Lawless's representation. P56.1 at ¶¶ 121-124, 183; *see also* Plaintiff's Response to D56.1 at ¶ 57. Yet, the facts show that Deshler was aware that she continued to openly reside on the premises. P56.1 at ¶¶ 125, 135-136. Beginning in or about 2008, Ms. Lawless made repeated requests to Deshler that she be permitted to re-add Ms.

Greene to the household composition, bringing with her supporting documentation of her daughter's identity and income. *Id.* at ¶¶ 131-132. Deshler rejected her requests without any explanation for its decision, and did not commence termination proceedings against the household for having an unauthorized occupant.  *See Id.*

In 2012, when Ms. Greene learned that she had been removed from the household composition without her knowledge, she requested that Deshler restore her to the Section 8 family composition.  P56.1 at ¶¶ 127, 139. Deshler rejected her request. *Id.* at ¶ 139. Neither Ms. Lawless nor Ms. Greene were apprised of any administrative remedy to challenge Deshler's refusal to restore Ms. Greene to the household composition. *Id.* at ¶¶ 137-140. Ms. El Shahat's testimony shows that her belief that a tenant improperly removed from the household composition *should* be entitled to review by HUD.  P56.1 at ¶ 157.

In 2013, Ms. Greene was further denied adequate process when HUD denied Deshler's request to restore Ms. Greene to the family composition or perform a retroactive recertification that would allow Deshler to voucher for the subsidy for Ms. Greene's apartment under Ms. Greene's name.  P56.1 at ¶ 154-155, 167, 173-174. No notice was provided to Ms. Greene by Deshler or HUD of this determination, and as such, Ms. Greene was afforded no opportunity to cure or to challenge this decision.  *See Id.*

Accordingly, HUD denied Ms. Greene adequate notice and due process in that she had no recourse to challenge:  (i) her improper removal from the household composition; (ii) Deshler's denial of her mother's request to re-add Ms. Greene to the household composition; or (iii) her own request to be restored to the family composition.  *Goldberg,* 397 U.S. at 263–71 (1970); *Mathews*, 424 U.S. at 334–35.

Ms. Greene's challenge to the lack of notice is reinforced by the fact that Deshler did not observe Handbook provisions that provide safeguards against a family member's improper removal from the household composition, and, HUD ratified Deshler's unreasonable refusal to entertain repeated requests to restore her to the household composition. *See* D56.1 at ¶ 57; P56.1 at ¶¶ 122-124, 154-155, 167, 173-174.

In December 2013, HUD also denied Ms. Greene due process of law when it denied her request for exercise of the HUD Handbook waiver provision. *See* P56.1 at ¶ 173. Ms. El Shahat stated that she summarily denied the request based her interpretation of the definition of "qualified tenant" in 24 C.F.R. § 236.2 Subpart A in the 1995 edition of the C.F.R. P56.1 at ¶ 174; Waglow Decl. ¶ 25 & Ex. X (McCune Dep. Tr.) at 21:11–22:2.  However, Ms. Greene is eligible for a Section 8 Subsidy under that definition. 24 C.F.R. § 236.2 Subpart A. Ms. El Shahat also refused to grant Ms. Greene's waiver request because she affirmed Deshler's position that Ms. Greene was not entitled to the subsidy since she was not on the last lease—the very provision that Ms. Greene asked HUD agree to waive in light of the totality of the circumstances. *See* P56.1 at ¶¶ 168-169, 173-174.  Ms. El Shahat, in denying the waiver, refused to give any consideration to the individualized facts in Ms. Greene's case, but rather solely on her policy preference not to depart from the text of the Handbook.  Indeed, HUD's policy arguments make clear that HUD as a matter of policy refuses to consider waiver under any circumstances of the requirement that only household members listed on the last lease can succeed to a subsidy.

Furthermore, Ms. El Shahat's testimony highlighted the fact that she had no experience applying the waiver provision. *See* P56.1 at ¶¶ 177, 179.  Thus, her waiver denial was not based on any experience, expertise, or reasonable criteria.  HUD now asserts all requests must be made

in writing but this was not expressed to Ms. Greene or her counsel at the time the waiver request was made. P56.1 at ¶ 181. Given Ms. Greene's lack of recourse to challenge her removal from the household composition, the frustration of her efforts to be restored, the favorable housing court decision finding that she was entitled to succession rights to the apartment, and the equities in her favor, the summary denial of Ms. Greene's request for exercise of the waiver provision violated Ms. Greene's right to due process.

Ms. Greene more than adequately states a due process claim under the *Mathews v. Eldridge* three-part framework of analysis.

Here, the first prong of the individual's "private interest" is weighty. Ms. Greene faces eviction and homelessness from her home of over thirty years without continuation of the Section 8 subsidy since she requires the subsidy to make it affordable to her and her infant child. P56.1 at ¶¶ 101, 145. Her private interest is more substantial than that of the plaintiffs in the *Ressler* and *Watson* cases, who did not have a longstanding connection to the apartment in question.

The second prong assesses the "risk of erroneous deprivation" without additional procedural safeguards. Ms. Greene asserts that she was improperly removed from the Section 8 household without her consent, she was improperly denied restoration to the household, she was denied continuation of the subsidy, and her waiver request was not meaningfully considered—all without any means or process to challenge these decisions. These actions highlight how the risk of erroneous deprivation is high and the denial of process at each step had the snowball effect of making it even harder for her to obtain a hearing for her claims at the next stage of the process. The passage of time since she was last on the household composition may also have played a factor in HUD refusing to grant continuation of the subsidy. HUD's wrongful summary denial

34

of Ms. Greene's waiver request without a meaningful inquiry into the totality of the circumstances in fact led to the erroneous deprivation of Ms. Greene's Section 8 subsidy, which will have the serious effect of rendering her homeless.

The third *Mathews v. Eldridge* prong to consider is the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail. Additional procedural protections would not be unduly burdensome to HUD.  With respect to her removal from the household composition, and the termination of the subsidy, Ms. Greene could have been afforded the following non-burdensome procedural protections including:   (1) notice that she was being removed from the household composition at the time it took place; (2) once she learned of her removal, notice that she could challenge the removal before Deshler and then achieve a review by HUD of the decision by Deshler; (3) notice to her as a remaining family member of Deshler's intent to terminate the household's Section 8 subsidy and what recourse to challenge this decision were available to her; (4) notice of HUD's decision in 2013 that it denied Deshler's request (without Ms. Greene's knowledge) for continuation of the subsidy in Ms. Greene's name, and steps for achieving review of that decision.

With respect to HUD's refusal to exercise the waiver provision on her behalf, Ms. Greene could have received non-burdensome procedural protections including: (1) notice of an opportunity to present evidence supporting her request for waiver; (2) notice of the criteria assessed when a waiver request is entertained; and (3) a written decision within a reasonable timeframe with a basis for the decision. Given the unique circumstances of Ms. Greene's case, it is not likely that HUD would face a deluge of claims like hers.

A finding that such further procedural safeguards would be appropriate under the circumstances and not unduly burdensome to HUD is supported by the procedures upheld by the Ninth Circuit in *Ressler*, 692 F.2d 1212.

In *Ressler*, the district court set forth that the owner, upon rejecting an applicant, must provide written notice indicating that a written response could be submitted to the HUD offices within 14 days; that the applicant could have a representative; and that HUD was to review an applicant's challenge to an owner's finding of ineligibility in an informal meeting undertaken at HUD offices and advise an applicant as to whether the owner's decision was approved or reversed within 5 working days.  *Ressler*, 692 F.2d at 1219.  HUD challenged these procedures as inconsistent with the statutory requirement that selection be made by the private owners, on the grounds that the owner can provide a fair review, and that the procedures would be costly and burdensome to HUD.  *Id*. at 1221.   The court rejected these arguments, finding that the HUD handbook allowed for examining of project operations "as such intervals as it deems necessary to ensure that the Owner is in full compliance with the terms and conditions of the [Section 8] contract," and that it would not unduly interfere with owner discretion.  *Id*. at 1221.  The court cast doubt on the owner's ability to make impartial decisions where the owner may have limited staff who were involved in the initial determination of ineligibility.  *Id.*  The court also rejected HUD's argument that an undue administrative burden would be raised by the requirements as purely speculative given the inability to know how many applications would seek a review by HUD.  *Id*. at 1222.

The district court's holding in *Watson*, 645 F. Supp. 345, also weighs in favor of a finding that Ms. Greene has adequately pled a due process violation.  There, HUD argued that the letter issued to Watson by the owner indicating that within seven days he could prove his

eligibility for Section 8 as an elderly disabled or handicapped person was constitutionally inadequate. *Waston*, 645 F. Supp. at 348.  The court held that since HUD had no formal procedure for terminating the Section 8 benefits in question, additional procedural safeguards were necessary to determine the extent of Watson's claimed entitlement to benefits due to disability and that HUD should be guided by DHHS guidelines regarding disability determinations. *Id*.  Specifically, the court in *Davis*, 751 F.2d at 185 discussed that due process required:  (i) an informal hearing if the applicant was denied eligibility based on an outstanding claim for alleged past rent or damages; (ii) written notice of the specific allegations and how to request a hearing; (iii) right to be representation and to rebut the facts presented; and (iv) a decision within a reasonable time advising of the reasons for the decision.

Finally, for HUD to have conducted a review of Ms. Greene's individualized facts and circumstances as part of a proper consideration of her waiver request would not have been unduly burdensome and should not be outweighed by "speculative" concerns about undue administrative or fiscal burden raised by HUD.  *Ressler supra* 692 F.2d at 1222.

Given the foregoing, clear issues of fact exist surrounding Ms. Greene's due process claims such that HUD's summary judgment motion should be denied.

### III.     HUD's False Allegations and Disparaging Attack on the Credibility of Ms. Greene's Claims and Motives Create Material Factual Disputes Rendering Its Arguments Unsuitable for Summary Judgment

HUD's argument in Section I.D. is replete with allegations against Ms. Greene and Ms. Lawless as well as speculative conclusions, which, to the extent that they contradict Ms. Greene's own sworn allegations, simply confirm that this action cannot be resolved pursuant to Rule 56 and that the case must be presented to a factfinder for adjudication.  Def. Mot. at 34–38.

HUD first inaccurately characterizes Ms. Greene's claims against it as grounded on one premise—that she should receive continuation of the Section 8 subsidy because she was unaware her name was removed from the household composition.  HUD argues that it is incredible that Ms. Lawless would sign paperwork omitting Ms. Greene from the household composition when Ms. Lawless was aware that such conduct would expose her to possible fines, imprisonment, or loss of the Section 8 subsidy.  HUD argues that Ms. Lawless knew to provide appropriate documentation to remove members from the household.  HUD's reasoning would make sense only in a world where all parties faithfully comply with their legal obligations – here, neither Ms. Lawless, nor Deshler, nor HUD did so.  Any issues of credibility, moreover, must be determined at trial and not upon summary judgment. HUD further argues that Ms. Lawless should have complained to HUD or CGI when Deshler denied her requests to add Ms. Greene back to the household recertifications.  But here again, Ms. Greene has stated that she was unaware of any complaint procedure, and nothing in the record demonstrates the contrary.  Weaver Decl. ¶ 22.

Similarly, HUD argues that it is not plausible that Deshler would refuse to add a family member because it would only suffer adverse consequences if HUD discovers that it has allowed fraud to occur.  Again, HUD's assumption that all Deshler's allegations must be taken as credible as a matter of law, and that HUD landlords cannot be indifferent, irresponsible, or commit any negligence or fraud, is at odds with both common sense and with the record in this case.  In fact, the discovery process produced contradictory evidence that must be resolved by credibility decisions after trial.  Ms. Greene's claims against HUD, moreover, are based not just on her lack of knowledge of her initial removal from the lease, but on a course of conduct committed by Deshler, HUD, and Ms. Lawless that have unfairly led to the result that she and her child should become homeless.

First, the legal basis justifying the continuation of the Section 8 subsidy is very clearly laid out in Judge Stoller's decision granting Ms. Greene succession to the apartment. *See* P56.1 at ¶ 144; Weaver Decl. ¶ 4, Ex. C.  Judge Stoller, after hearing testimony from the parties and examining supporting documents provided by both sides, found that Ms. Greene credibly asserted and presented her succession rights to the apartment.  *Id.* Ms. Greene was found to have established residency and co-residency with her mother Ms. Lawless. *Id.*

Furthermore, Ms. Greene paid her rent to her mother as it was her obligation to do so as a daughter with a job.  P56.1 at ¶ 112. Deshler knew about Ms. Greene's presence in the household through its day-to-day management and operations as well as regular inspection checks. *Id.* at ¶¶ 135-136.  When Ms. Greene was removed from the household, no documentation was provided to support the removal. *Id.* at ¶¶ 122-124. Ms. Lawless did not inform Ms. Greene that she intended to remove her.  *Id.* at ¶ 123. When Ms. Lawless repeatedly asked to add Ms. Greene back to the household composition, she was not asked to provide supporting documentation; rather, she was told that her request would be impossible because Ms. Greene was already taken off.  *Id.* at ¶¶ 131-132. Deshler did not advise Ms. Lawless that she could add Ms. Greene as a new member nor did it notify Ms. Lawless any legal recourse for appealing their denial of adding Ms. Greene back. *Id.* HUD appears to argue that Ms. Lawless knew how to make such complaints.

For five to seven years, neither Ms. Lawless nor Ms. Greene was approached about Ms. Greene's undocumented presence at Deshler, despite Ms. Greene openly living at the Deshler Apartments. *See Id.* at ¶¶ 122, 135-136. When faced with evidence of Ms. Greene's continuous tenancy, Deshler ignored it and lost at trial. *Id.* at ¶ 144.  Despite Ms. Greene's victory, HUD refused to grant the subsidy at Deshler's request, without any notice to Ms. Greene. *Id.* at ¶ 155.

It is these circumstances surrounding Ms. Greene's tenancy, through no commitment of fraud of her own, that Ms. Greene seeks a continuation of the Section 8 subsidy for her family, or in the alternative, a meaningful review of her case for consideration of the waiver provision.

HUD then argues it cannot grant the subsidy to Ms. Greene because it would be authorizing the perpetration of fraud.  As an initial matter, there has never been any HUD or judicial finding of fraud surrounding Ms. Greene's tenancy and HUD does not support its disparaging allegation with any evidence.  Second, Ms. Greene is seeking a waiver of the requirement due to multiple factors unique to her circumstances that would not in any way undermine HUD's general policy of discouraging fraud.  She had been tendering money for her share of the rent when she was working. *Id.* at ¶ 112. She did not know that she was removed from the recertifications as a household tenant. *Id.* at ¶ 123. No one approached her for production of documents showing that she has indeed left the apartment. *Id.* at  ¶ 121-124. She sees the management agents in her building on a regular basis. *Id.* at ¶ 135-136. Accordingly, Ms. Greene did not have the requisite mental state to commit any type of fraud in this case and is simply asking for a waiver of one Handbook requirement in light of the totality of her circumstances.  Moreover, these factors should be unlikely to be repeated unless other Project-Based Section 8 owners are acting similarly improper without HUD oversight.

Accordingly, HUD's arguments in Section 1D, simply establish the existence of numerous credibility issues and factual disputes, and HUD's Rule 56 motion must therefore be denied. *Fabrikant*, 691 F.3d at 205; *Wilson*, 625 F.3d at 60.

## IV.    DISPUTED MATERIAL FACTS EXIST CONCERNING MS. GREENE'S APA CLAIMS

### A.  Ms. Greene Challenges HUD's Affirmative Act of Denying Her Waiver Request

The APA directs that "a person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute, is entitled to judicial review thereof." 5 U.S.C. § 702. Specifically, "the reviewing court shall decide all relevant questions of law, interpret constitutional and statutory provisions, and determine the meaning or applicability of the terms of an agency action." 5 U.S.C. § 706. The court shall "hold unlawful and set aside agency action, findings, and conclusions found to be arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A). Moreover, the court "must assess, among other matters, whether the decision was based on a consideration of the relevant factors and whether there has been a clear error of judgment." *Guertin v. United States*, 743 F.3d 382, 386 (2d Cir. 2014) (citing *Bechtel v. Adin. Rev. Bd.*, 710 F.3d 443, 446 (2d Cir. 2013)). Accordingly, "[a]n agency action will thus only be set aside if it 'has relied on factors which Congress had not intended it to consider, entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise." *Id.* at 386 (citing *Bechtel*, 710 F.3d at 446).

Here, HUD woefully mischaracterizes Ms. Greene's APA claims as agency inaction. Def. Mot. at 28. HUD argues that the relief Ms. Greene seeks requires HUD action and thus, she must allege a mandatory action that HUD is required to take. *Id.* While Ms. Greene indeed seeks a reversal on the waiver denial, Ms. Greene challenges HUD's denial of the waiver provision to her case. HUD took an affirmative step to deny her request for a waiver. There lies the action, not an inaction. *See Guertin*, 743 F.3d at 386 (plaintiff challenging denial of reimbursement of attorney's fees where the relief sought is HUD action to grant such

reimbursement); *see also*, *Nambe Pueblo Hous. Entity v. HUD*, No. 11-CV-01516-RPM, 2014 WL 9051511, at *3–5 (D. Colo. 2014) (finding HUD's decision to eliminate and recapture grants to a Native American tribe was arbitrary and capricious and HUD must restore to the Tribe funds that it has recaptured).  It is the process HUD took, which appears to be no process at all, that Ms. Greene challenges as a violation of federal law.  An inaction on the waiver provision would be if HUD had *ignored* Ms. Greene's request for a waiver.  This did not happen. Accordingly, HUD's argument on this issue is misguided and the Court must deny its motion on this point.

### B. There are Disputed Material Facts Concerning Whether HUD's Denial of the Continuation of the Section 8 Subsidy and Waiver Provision was Arbitrary and Capricious and an Abuse of Discretion

As discussed below, there are triable issues of fact concerning Ms. Greene's APA claims such that HUD's motion on her APA claims must be denied.  In this action, Ms. Greene asserts that HUD violated the APA by:  (1) refusing to recognize her as a remaining family member and continue her Section 8 subsidy as well as denying her waiver request; (2) affirming Deshler's violations of the HAP contract; (3) refusing to recognize her right to the Section 8 subsidy under the apartment lease; and (4) by affirming the raising of Ms. Greene's rent to fair market rent, which also violates the Brooke Amendment.  HUD does not address Ms. Greene's third and fourth APA claims.

The Supreme Court has noted that while agencies have discretion to act, such discretion cannot be abused and is not "unbounded."  *F.C.C. v. Fox Television Stations, Inc.*, 556 U.S. 502, 548 (2009) (citing *Burlington Truck Lines, Inc. v. United States,* 371 U.S. 156, 167–168 (1962)); *Cutler v. Hayes*, 818 F.2d 879, 897 (D.C. Cir. 1987) (discussing that though an agency has broad discretion to set its agenda, such discretion is not unbounded since "consequences of dilatoriness

42

may be great"); *Freeport Minerals Co. (Freeport-McMoran, Inc.) v. United States*, 776 F.2d

1029, 1031 (Fed. Cir. 1985) (citations omitted) (stating that though statements in regulations

granting discretion to an agency are read broadly, such discretion is not unbounded); *NSK Corp.*

*v. United States*, 637 F. Supp. 2d 1311, 1318 (Ct. Int'l Trade 2009).  An agency decision is

issued in accordance with the law when it is constitutional and not contrary to statute, regulation,

precedent, or procedures.  *NSK Corp.*, 637 F. Supp. 2d at 1318 (citing *F.C.C. v. NextWave Pers.*

*Commc'ns Inc.*, 537 U.S. 293, 300 (2003)).  Although a review under the arbitrary and

capricious standard is a narrow one, the court must still engage in a substantial inquiry of the

agency's action.  *Lands Council v. McNair,* 537 F.3d 981, 987 (9th Cir.2008), overruling in part

on other grounds recognized by *Friends of the Wild Swan v. Weber,* 767 F.3d 936, 949 (9th Cir.

2014); *Natural Res. Council Fund v. Brong*, 492 F.3d 1120, 1124–25 (9th Cir. 2007).

  With respect to its denial of Ms. Greene's waiver request, HUD argues that its application

of the Handbook's provisions regarding remaining family members is not arbitrary, capricious,

or an abuse of discretion.  Def. Mot. at 40.  HUD argues that its "application of the remaining

member of the tenant family Handbook provision to Plaintiff is entirely consistent with the

Section 8 statutory and regulatory scheme.  *Id.*  HUD supports this proposition by citing *Coley*

for the quote that Section 8 benefits are "meant to pass only to members who both report their

residency and contribute their own income to the calculation of any subsidy."  2015 WL

5854015, at \*5 (citing *Valley Dream Hous. Co.*, 16 Misc. 3d 1138(A), \*8 (Nassau Cnty. Dist. Ct.

2007) (emphasis added)).  The above proposition misinterprets *Valley Dream* because the trial

court did not make that holding.  On the contrary, the court in *Valley Dream* pointed to the

general trend to analyze each RFM's succession claim on a case-by-case factual basis, viewed

under the totality of the circumstances.  *Valley Dream*, at \*5.  In fact, the court recognized the

holding in *2013 Amsterdam Avenue Hous. Assocs v. Estate of Almeda Wells*, 2006 N.Y. Slip Op.

50084(U) (App. Term 1st Dep't 2006), where "the absence of (an occupant's) name on the

family composition document was not fatal to her succession . . ." and found that the Respondent

was a remaining family member.  *Id.* at *6, 8.

Moreover, New York State courts consistently recognize that the absence of a remaining

family member's name on the last lease or recertification is not fatal to the succession claim.  *See*

*e.g.*, *Manhattan Plaza Assocs. v. DHPD*, 3 Misc. 3d 717 (Civ. Ct., N.Y. Cnty., 2004), *aff'd* 8

A.D.3d 111 (1st Dep't 2004); *Los Tres Unidos Associates, LP. v. Colon*, 45 Misc. 3d 129(A),

2014 N.Y. Slip Op 51566(U) (App. Term, 1st Dep't 2014); *Lenoxville Assocs. v. Downs*, 4 Misc.

3d 138(A) (App. Term, 1st Dep't 2013); *2013 Amsterdam Ave. Hous. Assoc. v. Estate of Wells*,

10 Misc. 3d 142(A), 2006 N.Y. Slip Op 50084(U), (App. Term, 1st Dep't 2006); *Inwood Assoc.*

*LP v. Williams*, 54100/14, NYLJ 1202722672079, at *1 (Civ. Ct. N.Y. Cnty., Mar. 13, 2015);

*Eastern Parkway Hap Assoc. LP v. Rivera*, 052150/2014, N.Y.L.J. 1202674912488, at *1 (Civ.

Ct. Kings Cnty., Oct. 8, 2014); *Upaca Site 7 Assocs. v. Crawford*, 12 Misc. 3d 1154(A) (Civ. Ct.

N.Y. Cnty., 2006); *Deshler Apts. Assocs. v. Greene*, L&T Index No. 82842/12 (Hous. Part, Mar.

4, 2013) (Stoller, J.), citing *Rivlin Houses Assocs. v. Estate of Brown*, 9/20/91, N.Y.L.J., p. 22,

col. 2 (App. Term, 1st Dep't 1991)).  Some courts further recognize that the HUD Handbook

requirement should not ring a death knell to an otherwise meritorious succession claim for

possession and the subsidy.  *Los Tres Unidos Associates, LP. v. Colon*, 45 Misc. 3d 129(A);

*2013 Amsterdam Ave. Hous. Assoc. v. Estate of Wells*.  Moreover, succession rights were

established by New York State to protect individuals from the sudden dislocation and preserve

family units that would otherwise be broken apart due to eviction.  *See generally, Braschi v.*

*Stahl Assocs. Co.*, 74 N.Y.2d 201, 212 (N.Y. 1989).

HUD next raises several policy arguments making clear that HUD believes that the requirement that a remaining family member must be included on each lease can *never* be waived, thus rendering the waiver provisions of its own Handbook a nullity.  HUD argues that granting a waiver of this provision would increase the number of fraudulent claims.  Def. Mot. at 40 (citing *Evans v. Franco*, 93 N.Y.2d 823 (1999)).  However, Ms. Greene in seeking a waiver of the requirement is not seeking to excuse fraud, but argues that she is entitled to relief due to multiple factors unique to her circumstances where both she and her mother repeatedly attempted to correct her mother's initial mistake in removing Ms. Greene from the lease. D56.1 at ¶ 87; P56.1 at ¶¶ 127-128. She tendered money for her share of the rent when she was working. *Id.* at ¶ 122. She did not know that she was removed from the recertifications as a household tenant.  *Id.* at ¶ 134. No one approached her for production of documents showing that she has indeed left the apartment. *Id.* at ¶¶ 121-124. She saw the management agents in her building on a regular basis. *Id.* at ¶ 135. Accordingly, Ms. Greene did not have the requisite *mens rea* to commit any type of fraud in this case and is simply asking for a waiver of one Handbook requirement in light of the totality of her circumstances.  Moreover, these factors are unlikely to be repeated unless many Project-Based Section 8 owners are acting in a similarly improper manner.

HUD is also concerned that it would be criticized for acting arbitrarily and capriciously by inconsistently applying its own policies.  Def. Mot. at 41.  HUD again mischaracterizes Ms. Greene's allegations.  Ms. Greene does not ask that HUD act inconsistently.  Rather, Ms. Greene asserts that the very existence of the Handbook's waiver provisions contemplates that HUD will on occasion depart from the usual application of the Handbook's other provisions, and that HUD's waiver denial in her particular case was an abuse of discretion and arbitrary and capricious because HUD never decided the waiver issue properly based upon her individual

facts.  HUD's position goes so far as to render the waiver provision meaningless and allows it to render denials simply by deciding that a waiver would be inconsistent with other Handbook policies.

HUD next attempts to dodge any responsibility in its governance of the Project-Based Section 8 program over Deshler Apartments by stating that its waiver denial was "sound" because Ms. Greene's apartment would go to someone on a waiting list.  Def. Mot. at 41–42. However, during the pendency of discovery and motion practice for this case, HUD adamantly asserts that it has no record of Ms. Greene invoking the waiver provision.  It cannot identify any criteria, process, procedure, or policy for evaluating a waiver request other than the plain language in the Handbook.  It has no record of any waiver request ever being made.  The only procedure identified is that the request must be made in writing. *See* D56.1 at ¶ 5. This requirement is not contained in any relevant federal regulation, statute, published policy guidance, or Handbook.  HUD never advised Ms. Greene that a written request was required when it had the opportunity to do so during the conversation with Ms. McCune, discussing the waiver provision for Ms. Greene. P56.1 at ¶ 181. Nor was there any indication that Ms. McCune to appeal to a higher official at HUD for a review of the denial. *Id.* The Court can only conclude that this alleged requirement is a mere afterthought, with no adequate notice to the public, made up in bad faith as HUD went along during the pendency of this litigation because proper procedures and consideration of factors, if they exist, were not followed.

Based on the discovery conducted, it is clear that HUD has been treating the waiver section as a non-existent provision and even if it exists, the requirement that a remaining family member must be included on each lease can *never* be waived.  However, such a provision must

have been drafted and meant to be treated with meaning by HUD; otherwise, it would simply be a nullity.  Thus, material facts exist for this proceeding to be tried.

Lastly, HUD argues that the Court should consider *Coley* as guidance in Ms. Greene's case.  *Coley v. Brook Sharp Realty LLC*, No. 13 Civ. 7527(LAP), 2015 WL 5854015 (S.D.N.Y. 2015).  However, the plaintiff in *Coley* is clearly distinguished from Ms. Greene's case because Mr. Coley never requested a waiver from HUD and HUD's actions were not the subject of that action.  The facts of the instant case, moreover, differ greatly from those in *Coley*, because Ms. Lawless, the head of household, attempted to re-add Ms. Greene back to the household composition but was denied without explanation.  P56.1 at ¶¶ 131-132. Ms. Lawless was not even offered the opportunity to add Ms. Greene as a new family member. *Id.* All this despite Deshler having knowledge that Ms. Greene has continuously lived there since 1982.  *Id.* at ¶¶ 106-111, 135-136. Furthermore, Ms. Greene was unaware that she was even removed from the household composition. *Id.* at ¶ 123. She has been living at Deshler Apartments since she was two years old and giving money to her mother to go towards rent in good faith. *Id.* at ¶¶ 182, 112. Her long-term tenancy to an affordable apartment was abruptly cut off because of Deshler's non-compliance with household removal as well as addition procedures.  HUD did not consider any of these factors when it denied Ms. Greene the waiver, much less give them any type of weight.  The only reason given for denying the waiver is the Handbook requirement itself, that Ms. Greene as not listed on the lease at the time Ms. Lawless vacated the apartment.  Such circular reasoning can only serve as an indication that the proper procedures for evaluating Ms. Greene's waiver request were not followed.

Accordingly, because Ms. Greene has sufficiently shown disputed factual issues going to whether HUD has violated her rights under the APA, HUD's 56 motion must therefore be denied.

## **CONCLUSION**

In conclusion, HUD's motion should be denied in its entirety because disputed issues of material fact exist for Ms. Greene's claims to be presented at trial.

Date:   March 11, 2016
        New York, NY

        Manhattan Legal Services
        1 West 125th Street, 2nd Floor,
        New York, New York 10027
        Tel. & Fax: (646) 442-3155
        Melissa Banks, MB 2891
        Rosalind Black, RB 7088
        Cynthia Weaver, CL 1399
        *Attorney for Plaintiff*

By:   /s/ Melissa Banks
          ————————————————

          MELISSA BANKS

By:   /s/ Cynthia Weaver
          ————————————————

          CYNTHIA WEAVER