**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

LONNETTE GREENE,

                Plaintiff,

      vs.

UNITED STATES DEPARTMENT OF
HOUSING AND URBAN DEVELOPMENT;
DESHLER APARTMENT ASSOCIATES, L.P.,

          Defendants.

No. 14 Civ. 3676 (AT)

**SUPPLEMENTAL SUBMISSION OF LAW OF DEFENDANT UNITED STATES
DEPARTMENT OF HOUSING AND URBAN DEVELOPMENT IN FURTHER
SUPPORT OF ITS MOTIONS FOR JUDGMENT ON THE PLEADINGS AND
SUMMARY JUDGMENT**

PREET BHARARA
United States Attorney for the
Southern District of New York
86 Chambers Street, Third Floor
New York, New York 10007
Telephone:  (212) 637-2528
Facsimile:   (212) 637-2786

*Attorney for Defendant United States
Department of Housing and Urban
Development*

NATASHA W. TELEANU
Assistant United States Attorney
– Of Counsel –

# TABLE OF CONTENTS

**PAGE**

PREMILINARY STATEMENT ............................................................................................1

ARGUMENT ....................................................................................................................5

I.      A Family's Entitlement to a Section 8 Subsidy is Conditioned Upon the Submission
        of "Complete and Accurate" Information, and the Family's Omission of Plaintiff from
        Its Household Composition Certifications Divests Plaintiff of Any Entitlement to
        Continued Benefits or Due Process Protection....................................................................5

II.     Plaintiff Lacks Standing to Assert Claims Against HUD Because HUD Did Not
        Deprive Plaintiff of Any Right ............................................................................14

CONCLUSION………………………………………………………………………..17

## TABLE OF AUTHORITIES

**CASES**                                                                **PAGE**

*Board of Regents v. Roth*,
   408 U.S. 564 (1972)..........................................................................................9, 10, 12

*Blatch ex rel. Clay v. Hernandez*,
   360 F. Supp. 2d 595 (S.D.N.Y. 2005)...............................................................13

*Blum v. Yaretsky*,
   457 U.S. 991 (1982)............................................................................................14, 16, 17

*Carter v. Belmont Shelter Corp.*,
   2005 WL 578165 (W.D.N.Y. Mar. 9, 2005).......................................................9

*Cisneros v. Alpine Ridge Group*,
   508 U.S. 10 (1993).............................................................................................16

*Clark v. Alexander*,
   894 F. Supp. 261 (E.D. Va. 1995), *aff'd*, 85 F.3d 146 (4th Cir. 1996) ............10

*Coley v. Brook Sharp Realty LLC*,
   2015 WL 5854015 (S.D.N.Y. Sept. 25, 2015)...................................................7

*Eidson v. Pierce*,
   745 F.2d 453 (7th Cir. 1984) ............................................................................12

*Evans v. Franco*,
   93 N.Y.2d 823 (1999) ........................................................................................11, 13

*Fincher v. South Bend Heritage Foundation*,
   606 F.3d 331 (7th Cir. 2010), *cert. denied*, 562 U.S. 1234 (2011)...................12

*Goldberg v. Kelly*,
   397 U.S. 254 (1970)...........................................................................................6, 14

*Hill v. Group Three Housing Development Corp.*,
   799 F.2d 385 (8th Cir. 1986) ............................................................................2, 10

*J.S. v. T'Kach*,
   714 F.3d 99 (2d Cir. 2013).................................................................................14

*Kapps v. Wing*,
   404 F.3d 105 (2d Cir. 2005)...............................................................................10

*Lowery v. District of Columbia Housing Authority*,
        2006 WL 666840 (D.D.C. Mar. 14, 2006).......................................................12

*Lujan v. Defenders of Wildlife*,
        504 U.S. 555 (1992)................................................................................15

*Massie v. U.S. Department of Housing & Urban Development*,
        246 F.R.D. 490 (W.D. Pa. 2007) .............................................................16

*Miller v. Hartwood Apartments, Ltd.*,
        689 F.2d 1239 (5th Cir. 1982) .................................................................15

*Perry v. Sindermann*,
        408 U.S. 593 (1972)............................................................................12, 13

*Public Utilities Commission of District of Columbia v. Pollak*,
        343 U.S. 451 (1952)................................................................................14

*Reiner v. West Village Associates*,
        600 F. Supp. 233 (S.D.N.Y. 1985) ..........................................................12

*Robbins v. U.S. Department of Housing & Urban Development*,
        72 F. Supp. 3d 1, 7 (D.D.C. 2014), *aff'd*, 2015 WL 3372527.........................15

*Roundtree v. U.S. Department of Housing & Urban Development*,
        2009 WL 7414663 (M.D. Fla. Aug. 28, 2009) .............................................16

*Washington v. Los Angeles Second Baptist Homes, Inc.*,
        2014 WL 2197757 (C.D. Cal. May 24, 2014) ..............................................11

*Watson v. U.S. Department of Housing & Urban Development*,
        645 F. Supp. 345 (S.D. Ohio 1986)………………………………………11, 13, 15, 17

**STATUTES**

18 U.S.C. § 1621 ..................................................................................................12

42 U.S.C. § 1437f(k)………………………………………………………………7

**RULES AND REGULATIONS**

24 C.F.R. § 5.504(b) ............................................................................................8

24 C.F.R. § 5.659(b) ............................................................................................7

24 C.F.R. § 880.601(b) ................................................................................................15

24 C.F.R. § 880.603 ....................................................................................................10

24 C.F.R. § 880.607 ...............................................................................5, 9, 10, 15, 16

24 C.F.R. § 982.1(b)(1)................................................................................................2

Defendant United States Department of Housing and Urban Development ("HUD"), by its attorney, Preet Bharara, United States Attorney for the Southern District of New York, respectfully submits this supplemental submission in response to the Court's August 16, 2016 Order (the "Order," Dkt. No. 89), and in further support of its motions for judgment on the pleadings and summary judgment.

## PRELIMINARY STATEMENT

Plaintiff filed a lawsuit against both HUD and Deshler Apartment Associates, L.P. ("Deshler"), the landlord of the building in which Plaintiff alleges she lived for most of her life, asserting claims against HUD for violations of the Fifth Amendment and the Administrative Procedure Act, and against Deshler for violations of her rights, breach of contract, equitable estoppel, and a third-party beneficiary claim. *See generally* Am. Compl. (Dkt. No. 22).  On January 4, 2016, HUD filed both a motion for judgment on the pleadings and a motion for summary judgment. *See generally* Dkt. Nos. 54-62.  The Order directs "Defendant" (which we understand to refer to HUD) to file a supplemental submission to address:  "(1) whether Plaintiff was a 'Section 8 recipient' by virtue of her membership in the tenant family prior to her removal from the household composition; (2) whether individuals who are authorized members of a Section 8 tenant family have a legitimate claim of entitlement to the continued receipt of the family's subsidy; and (3) whether Plaintiff was entitled to due process prior to her initial removal from the family composition." *See* Dkt. No. 89.

HUD hereby responds to the questions posed in the Order, and, further, explains why certain premises of questions posed in the Order are either not accurate or do not compel a finding of the existence of rights or obligations of Plaintiff as against HUD.

First, as detailed below, the answer to the first question of whether Plaintiff at any time

was a "Section 8 recipient," as that term is used in some case law, is less than clear, but beginning in 2007, she was not a beneficiary of the Section 8 subsidy paid on behalf of her family after being excluded from the family's sworn household composition certifications, and at *no* time did Plaintiff or any of Plaintiff's family members directly receive Section 8 benefits from HUD.[1]  Rather, based on the household composition and income information certifications reported each year by Plaintiff's family, Deshler calculated a subsidy amount that HUD paid *to Deshler* for the benefit of Plaintiff's mother as lead tenant and all identified family members.

As to the Order's second question, even setting aside that tenants never "receive" payment from HUD and instead merely receive the benefit of a subsidy paid by HUD directly to the landlord property owner (here Deshler), not all family members of subsidized tenants "have a legitimate claim of entitlement to the continued receipt of the family's subsidy," because entitlement to Section 8 benefits is conditioned upon and limited to those family members who certify their residence and eligibility on an annual basis.  *See* Dkt. No. 89; *see also* Dkt. No. 55 at 13-18, 21-26; Dkt. No. 58 at 24-27, 30-34.  Without a proper certification, entitlement to the benefit of the subsidy ends.  *Id.*  Moreover, HUD further respectfully seeks to clarify the nature of HUD's involvement in light of the Order's statement that this "case arises from *Defendant's* determination that Plaintiff was ineligible for continued receipt of her family's Section 8 subsidy because, notwithstanding her continued residency in the family's apartment, she was not a party

---

[1] The case law sometimes refers to "recipients" and "receipt" of Section 8 assistance.  But that terminology is normally used to distinguish participants from *applicants* for Section 8 assistance. *See, e.g.*, *Hill v. Grp. Three Hous. Dev. Corp.*, 799 F.2d 385, 393 (8th Cir. 1986) ("[W]e hold that applicants do not acquire a 'legitimate claim of entitlement' to or a 'property' interest in the receipt of Section 8 benefits merely upon proof that they satisfy the statutory income and family eligibility requirements.").  Here, Plaintiff's family participated in Section 8 project-based assistance (as opposed to Section 8 tenant-based assistance), in which "rental assistance is *paid for families* who live in specific housing developments or units." *See* 24 C.F.R. § 982.1(b)(1); *see also* Waglow Decl. (Dkt. No. 61), Ex. H, § 3 & Ex. I, § 3 ("HUD makes monthly payments to the Landlord on behalf of the Tenant.").

to the lease." *See* Dkt. No. 89 (emphasis added).  That "determination" was made by Plaintiff and her family through their annual sworn household composition certification statements; the only potentially relevant action or inaction by HUD was its subsequent decision to not waive its Handbook provision regarding remaining family members' eligibility to take over a lease when the primary tenant vacates, as applied to Plaintiff.  *See* Am. Compl. ¶¶ 76-84; El Shahat Decl. (Dkt. No. 59), ¶¶ 11-14; Waglow Decl. (Dkt. No. 61), ¶ 25 & Ex. X (McCune Dep. Tr.) at 6:11-7:5, 15:14-22.  Plaintiff sought a waiver from HUD in 2013, yet it is undisputed that since 2007, she had not been reported on the annual and interim Section 8 household composition certifications, nor was she ever a signatory tenant to the lease securing the Section 8 subsidy paid on behalf of her mother.  *See* Waglow Decl., ¶¶ 9-10, 12 & Ex. K (certifications) & Exs. H, I (leases executed by Plaintiff's mother).

As to the Court's third question as to whether Plaintiff "was entitled to due process prior to her initial removal from the family composition," as a threshold legal matter, Plaintiff cannot assert any due process claim against HUD for any purported deprivation of a right to a Section 8 subsidy, because under HUD regulations and practices HUD is not charged with conducting hearings or routinely assessing the accuracy of every family's reported household composition. Moreover, beyond the lack of any due process-conferring duty on the part of HUD, the Government has identified nothing that gives rise to any due process protection against a resident being not listed by her own family members on a household composition certification.  Rather, Plaintiff simply was eligible to benefit, and did benefit, from a Section 8 subsidy that was paid on her and her family's behalf for the period of time that Plaintiff was listed on the household composition certifications.  If she continued to reside in the apartment after she was no longer listed on the composition documentation, that would constitute a violation of program

requirements and would extinguish any entitlement she may once have had to continue to benefit from subsidized Section 8 housing, as is logical given that any income she earned would fail to be captured and taken into account in calculating the amount of the income-based subsidy paid by HUD on behalf of the family.  Upon Plaintiff's exclusion from the household composition certifications, beginning in 2007, Plaintiff no longer had a protected interest or any possible right to due process with respect to her right to reside in the apartment.

Moreover, even if Plaintiff had a cognizable right to continuation of the Section 8 subsidy, and even if HUD did have responsibility for adjudicating household composition issues (which it did not), Plaintiff cannot point to any deprivation or right that would trigger due process protections.  Whether an individual remains on annual and interim household composition certifications is entirely a function of a Section 8 family's compliance with its affirmative obligation to report complete and accurate information, and Plaintiff's exclusion resulted entirely from her and her family's apparent violation of that duty.  Therefore, with respect to Plaintiff's exclusion from the Section 8 household composition certifications, the only actions Plaintiff could challenge are those of herself and her family—not Deshler, let alone HUD.  There is no cognizable obligation for Deshler or HUD to hold a hearing to allow Plaintiff to challenge either the improper actions of her family or her own failure, as an income-earning adult, to fulfill her duty to certify.  Presumably, however, if at some point Deshler had discovered that Plaintiff's family was submitting inaccurate and untruthful Section 8 certifications, it could have sought to terminate the subsidy paid on behalf of Plaintiff's mother. In that scenario, the Section 8 regulations set forth the notice procedures applicable to tenancy terminations, but the protections would be triggered by a proposed subsidy termination, which would be an action of Deshler, as opposed to the non-reporting violation committed by

Plaintiff's own family.  *See* 24 C.F.R. § 880.607(c).[2]

Finally, although not directly responsive to the Order's specific questions, Plaintiff lacks standing to charge HUD with any due process violation because she cannot point to any action by HUD that caused her any cognizable injury in fact for Article III purposes.  Plaintiff's allegations that Deshler refused (i) to "restore" Plaintiff to the household composition certification (notwithstanding that any such ability or obligation was exclusively that of Plaintiff's family), (ii) to transfer the lease to Plaintiff's name, or (iii) to recognize Plaintiff as the remaining family member for purposes of the Section 8 subsidy (notwithstanding the HUD Handbook provision to the contrary) fail to establish any governmental action or other basis to attribute Deshler's purported actions or conduct to HUD for purposes of a due process claim.

## ARGUMENT

**I.    A Family's Entitlement to a Section 8 Subsidy is Conditioned Upon the Submission of "Complete and Accurate" Information, and Plaintiff's Family's Exclusion of Plaintiff from Its Household Composition Certifications Divests Plaintiff of Any Entitlement to Continued Benefits or Due Process Protection**

At least once Plaintiff's family excluded her from the sworn household composition certifications to Deshler, Plaintiff was no longer a beneficiary of the Section 8 subsidy paid on behalf of her family, or "Section 8 recipient" in the wording of the Order, because she was not an authorized household member and HUD's subsidy payment was made without taking her income into account, and instead calculated based only on the income and other attributes that Plaintiff's family did report.

Moreover, as an initial matter, Plaintiff's argument that she was "improperly removed

---

[2] Here, however, Deshler never terminated the subsidy; instead, Plaintiff's mother, the tenant of record, abandoned the apartment and moved to North Carolina, contrary to the lease requirement that "[t]he Tenant must live in the unit and the unit must be the Tenant's only place of residence."  *See* Ex. H, § 13; Ex. I, § 13 (leases executed by Plaintiff's mother); *see also* Am. Compl. ¶¶ 52-55.

from the household composition without her consent" is legally inaccurate or misleading as to HUD, which never "removed" her from the composition. *See* Pl.'s Opp'n Br. at 29. At all relevant times, Plaintiff was an adult who earned regular income, and therefore was under an independent legal obligation to report both her identity and her income to the apartment owner, Deshler, for purposes of Section 8 assistance. *See* Dkt. No. 55 at 5; Dkt. No. 58 at 3-4, 7-8. There is no dispute that beginning in 2007, Plaintiff's family, and specifically her mother, excluded her from the Section 8 household composition certifications that her family submitted to Deshler under penalty of perjury. *See* Waglow Decl., ¶ 12 & Ex. K at HUD0001052 (2007 certification signed by Plaintiff's mother and Plaintiff's sister); *id.* at HUD0001050 (2008 certification signed by Plaintiff's mother and Plaintiff's sister); *id.* at HUD0001048 (2008 interim certification signed by Plaintiff's mother and Plaintiff's sister); *id.* at HUD0001042 (2009 certification signed by Plaintiff's mother); *id.* at HUD0001044 (2009 interim certification signed by Plaintiff's mother); *id.* at HUD0001040 (2010 certification signed by Plaintiff's mother); *id.* at HUD0001037 (2011 certification signed by Plaintiff's mother). Thus, assuming as true Plaintiff's contention that she continuously resided in the apartment, Plaintiff's family failed to comply with its Section 8 obligations.

The Supreme Court has stated that welfare benefits are a statutory entitlement "for persons *qualified* to receive them." *Goldberg v. Kelly*, 397 U.S. 254, 261-62 (1970) (emphasis added). Here, both the Section 8 statute and the HUD regulations make clear that Section 8 recipients do not have an unqualified right to subsidized housing or continuing eligibility for benefits. Rather, the legal framework emphasizes the requirement that Section 8 families regularly provide—and update when necessary—complete and accurate information, and any entitlement to the benefits of the program is limited to persons who comply with its

requirements.  *See Coley v. Brook Sharp Realty LLC*, 2015 WL 5854015, at *5 (S.D.N.Y. Sept. 25, 2015) ("Although the purposes of Section 8 housing do seek to maintain the unity of families, which favors continuity of housing for [a remaining member of a tenant family], those benefits are meant to pass only to members who both report their residence and contribute their own income to the calculation of any subsidy.").  Thus, while Plaintiff seemingly was a Section 8 beneficiary (not "recipient") before 2007 when she was listed on the compositions, she lost eligibility for that status thereafter when her family (and she) stopped reporting that she lived in the apartment.

Other applicable laws and regulations confirm that families bear responsibility for providing accurate information, as a condition of participation in the Section 8 program.  In creating the Section 8 program, Congress mandated that HUD "shall establish procedures which are appropriate and necessary to assure that income data provided to public housing agencies and owners *by families* applying for or receiving assistance under this section is *complete and accurate*."  42 U.S.C. § 1437f(k) (emphasis added).  HUD has promulgated regulations requiring that "the *family must supply* any information requested by the owner or HUD for use in a regularly scheduled reexamination or an interim reexamination of family income and composition in accordance with HUD requirements."  24 C.F.R. § 5.659(b)(2) (emphasis added).  Mirroring the statute, HUD regulations require that "[a]ny information supplied *by the family* must be true and complete."  *Id.* § 5.659(b)(4) (emphasis added).  In addition, the importance of accurate reporting by families is underscored in HUD's Handbook, which provides:  "Adult members of a family must sign consent forms and, as necessary, verification documents, so that the owner can verify sources of family income and family size.  The owner *must consider a family ineligible* if the adult members refuse to sign applicable consent and verification forms."

*See* El Shahat Decl., ¶ 6 & Ex. A at HUD0003519 (HUD Handbook, § 3-11) (emphasis added).

To facilitate the provision of information by families, HUD requires landlord owners to use Form 50059, which, although "NOT for Submission to the Federal Government," is the landlord owner's "Official Record of certification."  *See, e.g.*, Waglow Decl., ¶ 11 & Ex. J.[3] Form 50059 is titled "Owner's Certification of Compliance with HUD's Tenant Eligibility and Rent Procedures."  *Id.*  Form 50059 explains that "[t]he information is being collected by HUD to determine an applicant's eligibility, the recommended unit size, and the amount the tenant(s) must pay toward rent and utilities."  *Id.*  Form 50059 further mandates that

> [y]ou must provide all of the information requested, including the Social Security Numbers (SSNs) you, *and all other household family members* age six (6) years and older, have and use.  Giving the SSNs of all family members age six (6) years and older is mandatory . . . .  Failure to provide *any information* may result in a delay or *rejection of your eligibility approval.*

*Id.* (emphases added).

Both the tenant (or tenants) and owner must provide certifications.  *Id.*  The "Tenant(s)' Certification" provides:  "I/We certify that the information in Sections C, D, and E of this form are *true and complete* to the best of my/our knowledge and belief.  I/We understand that I/we can be fined up to $10,000, or imprisoned up to five years, *or lose the subsidy HUD pays* and have my/our rent increased, *if I/we furnish false or incomplete information.*"  *Id.* (emphases added).  Form 50059 requires Tenant Certifications from the "Head of Household," "Spouse/Co-Head," and all "Other Adult[s]."  *See id.* ("Tenant Signatures" section).  Section C of Form 50059 requires information of all household members.  *See id.*  "Head of household" is defined as "the adult member of the family who is the head of the household for purposes of determining income eligibility and rent."  24 C.F.R. § 5.504(b).

---

[3] A blank version of Form 50059 is also available publicly through HUD's website.  *See* http://portal.hud.gov/hudportal/documents/huddoc?id=50059.pdf.

In addition to reporting and certification requirements, a family's entitlement to continued occupancy of an apartment for which a Section 8 subsidy is paid is conditioned upon additional obligations set forth in a lease executed with the landlord property owner.  *See, e.g.*, Waglow Decl., ¶¶ 9-10 & Exs. H, I (leases executed by Plaintiff's mother).  The Section 8 regulations provide for "[e]ntitlement of Families to occupancy."  *See* 24 C.F.R. § 880.607(b).  A family is entitled to occupancy of an apartment and an owner may not terminate any tenancy except upon the following grounds:  (i) material noncompliance with the lease; (ii) material failure to carry out obligations under any state landlord and tenant act; (iii) certain criminal activity or alcohol abuse; or (iv) other good cause.  *Id.*  "Material noncompliance with the lease" is defined as "[o]ne or more substantial violations of the lease" or "[r]epeated minor violations of the lease."  *Id.* § 880.607(b)(3)(i).  A "substantial violation of the lease" is defined as:

> Failure of the family to timely submit all required information on family income and composition, including failure to submit required evidence of citizenship or eligible immigration status (as provided by 24 C.F.R. part 5), failure to disclose and verify Social Security Numbers (as provided by 24 C.F.R. part 5), failure to sign and submit consent forms (as provided by 24 C.F.R. part 5), *or knowingly providing incomplete or inaccurate information….*

*Id.* § 880.607(b)(3)(ii) (emphasis added).

These obligations make it clear that "[t]he Section 8 program requires beneficiaries to comply with a series of requirements and notification provisions."  *Carter v. Belmont Shelter Corp.*, 2005 WL 578165, at *1 (W.D.N.Y. Mar. 9, 2005) (noting that a "decrease in the members residing in a household results in a decrease in the amount of benefits the family is entitled to receive under the Section 8 program").  Legitimate claims of entitlement "are defined by existing rules or understandings that stem from an independent source such as state law—rules or understandings that secure certain benefits and that support claims of entitlement to those benefits."  *Bd. of Regents of State Colleges v. Roth*, 408 U.S. 564, 571 (1972).  Here, a family's

claim of entitlement to a Section 8 subsidy is *secured* by its compliance with complete and accurate reporting of information, which is necessary to confirm Section 8 eligibility and calculate the amount of the subsidy paid.  *See* 24 C.F.R. § 880.603.  In contrast, Plaintiff cannot point to any rule or mutually explicit understanding that her family has a continuing entitlement to a Section 8 subsidy in light of the incomplete and inaccurate reporting by her mother and sister.  *See Hill v. Grp. Three Hous. Dev. Corp.*, 799 F.2d 385, 393 (8th Cir. 1986) ("But even if the plaintiffs proved that the information was false, they would still not be entitled to Section 8 housing.  They are *entitled* to housing, as opposed to eligible for it, only after a private owner accepts their application…. Even if Section 8 applicants rejected by an owner were to receive a hearing, there still is nothing that legally would *require* the owner to accept the applicant.").  The failure of Plaintiff's family to certify accurate information and income to Deshler violated the mandate of Section 8, and further precludes any assertion of entitlement to a subsidy.  Indeed, the inaccurate certifications are grounds for termination of the family's Section 8 subsidy under the terms of the lease, even had Plaintiff's mother not abandoned it.  *See* 24 C.F.R. § 880.607(b); Waglow Decl., ¶¶ 9-10 & Ex. H, § 23 & Ex. I, § 23 (leases executed by Plaintiff's mother).

Nor can Plaintiff point to her asserted lack of knowledge regarding her exclusion from the household composition certifications to justify her claim to continuing entitlement to a subsidy.  *See Kapps v. Wing*, 404 F.3d 105, 113 (2d Cir. 2005) ("A mere 'unilateral expectation' of receiving a benefit is not … enough; a property interest arises only where one has a 'legitimate claim of entitlement' to the benefit." (quoting *Roth*, 408 U.S. at 577)); *see also Clark v. Alexander*, 894 F. Supp. 261, 264 (E.D. Va. 1995) ("[A] participant's failure to provide required information to the [local housing authority] will not shield that participant from his or her responsibilities under the program.  If plaintiff's argument is taken to its logical conclusion,

the [local housing authority] would not then be able to terminate housing assistance when a family member violates a provision of the HUD or PHA regulations unless that person had first acquired the regulatory status of 'Family member'."), *aff'd*, 85 F.3d 146 (4th Cir. 1996).  Both the language of Section 8 and its objectives seek to provide Section 8 subsidy payments to benefit the family as a collective unit, and Plaintiff cannot point to any statute, regulation, or rule contemplating an individualized right of a family member.  Therefore, Plaintiff's entitlement to a Section 8 subsidy rises and falls with that of her family.  For this additional reason, Plaintiff's exclusion from the household composition certifications by both her mother and her sister— under penalty of perjury—defeats Plaintiff's claim of entitlement.  *See Watson v. U.S. Dep't of Hous. & Urban Dev.*, 645 F. Supp. 345, 349 (S.D. Ohio 1986) ("An illegitimate act cannot create a legitimate entitlement."); *see also Washington v. Los Angeles Second Baptist Homes, Inc.*, 2014 WL 2197757, at *6 (C.D. Cal. May 24, 2014) ("An unauthorized resident might have income that would—if accounted for—decrease the [subsidy payments] to the owner, or cause the family to exceed Section 8's income limit.  To permit an unauthorized resident to claim [remaining family member] status 'would be to open the door to possible fraudulent claims and to a wholesale disregard of the intent of the subsidy program.'" (quoting *Evans v. Franco*, 93 N.Y.2d 823, 825 (1999))).

Nor can any legitimate claim of entitlement be found in an assertedly continuing right to have been listed on the household composition certifications, given that the party responsible for exercising that right was Plaintiff's family, and not Deshler, or HUD.  Plaintiff's mother and all adults in the family were obligated to "certify that [household composition was] *true and complete* to the best of [their] knowledge and belief," under penalty of perjury, and with the specifically disclosed risk of "los[ing] the subsidy HUD pays."  *See, e.g.*, Waglow Decl., ¶ 11 &

Ex. J at HUD0001235; *see also* 18 U.S.C. § 1621.  No plausible reading of the Section 8 statute,

regulations, or HUD Handbook requires a landlord or HUD to hold a due process hearing to

permit a family member to challenge other family members' compliance with their affirmative

obligations, including the requirement to tell the truth.  *Fincher v. S. Bend Heritage Found.*, 606

F.3d 331, 334 (7th Cir. 2010), *cert. denied*, 562 U.S. 1234 (2011) ("[A] legitimate claim of

entitlement to warrant a due process hearing occurs 'only when the statutes o[r] regulations in

question establish a framework of factual conditions delimiting entitlements which are capable of

being explored at a due process hearing.'" (quoting *Eidson v. Pierce*, 745 F.2d 453, 459-60 (7th

Cir. 1984))); *Reiner v. W. Vill. Assocs.*, 600 F. Supp. 233, 243 (S.D.N.Y. 1985) ("Under *Roth*

and *Sindermann* a determination that an entitlement exists depends on finding both that a statute

(or rules and regulations) conferred an intended benefit on the plaintiff and that the conferring

act is in effect at the time the claimed right to due process arises.  As the *Roth* court put it:

'[property interests] … are defined by *existing* rules … *that secure certain benefits*….'" (quoting

*Roth*, 408 U.S. at 577) (emphases and alterations in original)).  In effect, Plaintiff's argument that

she is entitled to adequate notice and due process to challenge her "improper removal from the

household composition" would require a landlord to referee family discord and lend validation to

potentially fraudulent behavior—neither of which Section 8 contemplates.  *Cf. Lowery v. Dist. of*

*Columbia Hous. Auth.*, 2006 WL 666840, at *8 (D.D.C. Mar. 14, 2006) ("[Plaintiff's] argument

goes too far.  It would transform every step of the Section 8 program into a 'right' of

constitutional proportions.  There is no evidence that Congress intended such a sweeping

approach to the Section 8 program." (internal citation omitted)).

     Nor—as to the Order's third question regarding whether Plaintiff was entitled to due

process—was Plaintiff entitled to any procedural protections regarding her subsequent request to

be retroactively added to the household composition and/or lease upon learning that she had been excluded.  *See Watson*, 645 F. Supp. at 349 ("The Court does not believe that the Fifth Amendment was intended to force agencies to hold hearings before depriving persons of benefits for which they admittedly do not qualify.").  Upon Plaintiff's exclusion from the Section 8 certification, she was no longer a beneficiary of a Section 8 subsidy, which would extinguish any due process right that she might have had at any prior point.  *See Blatch ex rel. Clay v. Hernandez*, 360 F. Supp. 2d 595, 613-14 (S.D.N.Y. 2005) (recognizing that tenants of record in public housing had protected property right for purposes of a due process claim, but mere occupants of public housing did not have a protected property right).

Moreover, any challenge Plaintiff could bring regarding her alleged "removal" from the household composition and certification form would pertain to her own failure to certify and her mother and sister's exclusion of Plaintiff from the certification, and *not* actions by HUD or Deshler. Plaintiff cannot point to any "rules or mutually explicit understandings" requiring anyone other than herself and her family to provide accurate household and income information.  *See Perry v. Sindermann*, 408 U.S. 593, 601 (1972) ("A person's interest in a benefit is a 'property' interest for due process purposes if there are such rules or mutually explicit understandings that support his claim of entitlement to the benefit and that he may invoke at a hearing."); *see also Evans*, 93 N.Y.2d at 825 (holding that petitioner was not entitled to a hearing with NYCHA to "determine whether petitioner [was] entitled to Section 8 benefits as a remaining family member" in light of the "13 unequivocal annual statements" from the deceased Section 8 tenant that failed to identify petitioner and holding "there is no basis on this record to conclude that petitioner is a family member or *that a hearing is necessary to confirm his status*" (emphasis added)).

## II.    Plaintiff Lacks Standing to Assert Claims Against HUD Because HUD Did Not Deprive Plaintiff of Any Right

As HUD's prior submissions demonstrate, Plaintiff's claims largely center on alleged wrongs committed by both Plaintiff's mother[4] and, arguably, Deshler as the landlord property owner.  *See, e.g.*, Dkt. No. 82 at 1.  Yet determining what procedural due process may be owed requires identifying both the "precise nature of the *government function* involved as well as of the private interest that has been affected by *governmental action*."  *Goldberg v. Kelly*, 397 U.S. 254, 263 (1970) (emphasis added).  Thus, even assuming Plaintiff could establish a protected property interest in a Section 8 subsidy—which she cannot—to establish a procedural due process claim, she must allege that the *government* deprived her of a protected right.  *See J.S. v. T'Kach*, 714 F.3d 99, 105 (2d Cir. 2013) ("[A] plaintiff must 'first identify a property right, second show that the [government] has deprived him of *that* right, and third show that the deprivation was effected without due process." (second and third alterations in original)); *see also Blum v. Yaretsky*, 457 U.S. 991, 1004 (1982) ("[C]onstitutional standards are invoked only when it can be said that the [government] is *responsible* for the specific conduct of which the plaintiff complains." (emphasis in original)); *Public Utilities Comm'n of Dist. of Columbia v. Pollak*, 343 U.S. 451, 461 (1952) (The Fifth Amendment applies "only [to] the Federal Government and not private persons.").  Plaintiff cannot meet this requirement.

Not only does Plaintiff lack entitlement to relief against HUD for reasons stated above, but the same reasons demonstrate that she lacks standing to assert claims against HUD, because HUD caused her no cognizable injury in fact.  To establish standing, a plaintiff must demonstrate (i) that she has "suffered an injury in fact;" (ii) that the injury is "fairly traceable to the challenged action of the defendant;" and (iii) that it is "likely as opposed to merely speculative,

---

[4] Although Plaintiff repeatedly blames her mother for her predicament, she chose not to sue her mother.

that the injury will be redressed by a favorable decision" by the court. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 556, 560-61 (1992). Here, any perceived deprivation of Plaintiff's rights by her family members and/or Deshler is not "fairly traceable" to HUD or any HUD action. *See Lujan*, 504 U.S. at 50-61; *see also Robbins v. U.S. Dep't of Housing & Urban Dev.*, 72 F. Supp. 3d 1, 7 (D.D.C. 2014) ("HUD merely funds the Section 8 program but does not make individualized determinations such as the ones about which [plaintiff] complains."), *aff'd*, 2015 WL 3372527 (D.C. Cir. May 6, 2015) ("[T]he district court correctly concluded that [plaintiff's alleged] injury was traceable to the actions of the local public housing authority, not the actions of the federal defendants that appellants sued.").

The Section 8 regulatory scheme places exclusive responsibility for the operation and management of the Section 8 program with the owner, and HUD has no active operational or managerial involvement. HUD regulations provide:

> The owner is responsible *for all management functions*, including determining the eligibility of applicants, selection of tenants, reexamination and verification of family income and composition, determination of family rent (total tenant payment, tenant rent and utility reimbursement), collection of rent, termination of tenancy and eviction, and performance of all repair and maintenance functions (including ordinary and extraordinary maintenance), and replacement of capital items.

24 C.F.R. § 880.601(b) (emphasis added); *see also Miller v. Hartwood Apartments, Ltd.*, 689 F.2d 1239, 1243-44 (5th Cir. 1982) ("Pursuant to the statute and regulations the lessor [owner] determines and certifies the eligibility of would-be tenants, establishes the level of appropriate government subsidy for each tenant, maintains the apartments, and oversees compliance with lease provisions."); *Watson*, 645 F. Supp. at 347 ("The responsibility for selecting tenants and certifying them for section 8 aid is put on the owner."). Similarly, owners are responsible for terminating Section 8 tenancies. *See* 24 C.F.R. § 880.607(a) ("The provisions of this section apply to all decisions by an owner to terminate the tenancy of a family residing in a unit under

15

Contract during or at the end of the family's lease term."). The procedures for termination require that "[t]he *owner* must give the family a written notice of any proposed termination of tenancy, stating the grounds and that the tenancy is terminated on a specific date and advising the family that it has an opportunity to respond *to the owner*." *Id.* § 880.607(c)(1) (emphasis added).

Thus, although HUD is responsible for establishing regulations for Section 8 and making subsidy payments, it has no involvement in the day-to-day decisions and actions of landlords such as Deshler. *See Blum*, 457 U.S. at 1011 ("That programs undertaken by the State result in substantial funding of the activities of a private entity is no more persuasive than the fact of regulation of such an entity in demonstrating that the State is responsible for decisions made by the entity in the course of its business."); *see also* HUD's Br. (Dkt. No. 82) at 7 ("Even assuming Deshler refused, despite Greene's mother's requests, to add Greene back to the household composition after she was removed, such actions by Deshler do not give rise to a property interest of Greene in a Section 8 subsidy from HUD, or make out a claim that Greene is at risk of HUD erroneously depriving her of any protected property right.").[5] Therefore, any attempt by Plaintiff to attribute Deshler's management actions to HUD is unavailing.

Instead, the only "action" by HUD that Plaintiff alleges is HUD's refusal to exercise its discretion and grant Plaintiff a waiver of the remaining family member provision of its

---

[5] In contrast, court-recognized due process challenges of HUD actions have consistently involved alleged direct actions by HUD. *See, e.g.*, *See Cisneros v. Alpine Ridge Grp.*, 508 U.S. 10, (1993) (due process challenge to HUD's use of comparability studies to limit future automatic rent adjustments brought by private developers who entered into contracts with HUD to lease newly constructed apartment units to Section 8 tenants); *Roundtree v. U.S. Dep't of Hous. & Urban Dev.*, 2009 WL 7414663, at *1-2 (M.D. Fla. Aug. 28, 2009) (action by tenants challenging HUD's termination of its housing assistance payments contract with an owner, which would require the tenants of the owner's building to either pay full market rent or relocate); *Massie v. U.S. Dep't of Hous. & Urban Dev.*, 246 F.R.D. 490, 491 (W.D. Pa. 2007) (action by tenants challenging HUD's intent to suspend/abate Section 8 subsidy payments and displace all residents following foreclosure proceeding).

Handbook. *See* Am.Compl. ¶ 95. And as previously set forth, Plaintiff cannot establish any

right to a waiver. *See* Dkt. No. 55 at 18-28; Dkt. No. 58 at 27-34; Dkt. No. 74 at 2-7; Dkt. No.

82 at 2-8; *Watson*, 645 F. Supp. at 349 ("All they have is a desire that HUD grant them an

exception to the statutory scheme limiting participation to well-defined eligibility categories.").[6]

Furthermore, Plaintiff has not established, let alone alleged, that HUD coerced or encouraged

Plaintiff's mother's or Deshler's actions. *Blum*, 457 U.S. at 1004 (The government "normally

can be held responsible for a private decision only when it has exercised coercive power or has

provided such significant encouragement, either overt or covert, that the choice must in law be

deemed to be that of the [government].").

## CONCLUSION

As set forth above, Plaintiff was a beneficiary of a Section 8 subsidy during the period

she was properly included in the annual and interim Section 8 household composition

certifications, *i.e.*, until 2007. Thereafter, she was not. She never "received" benefits directly

from HUD. Tenant families that accurately and completely certify their household composition

and income have a legitimate claim of entitlement to continued benefit from a Section 8 subsidy,

but forfeit that entitlement when the family violates the mandates of Section 8. Plaintiff made no

application and had no due process right as against HUD at any time, and her and her family's

possible rights in connection with the Section 8 program expired in 2007, long before any

allegation she has raised against HUD. For the reasons set forth more fully above, as well as the

---

[6] To the extent Plaintiff alleges that HUD denied a supposed request by Deshler to put Plaintiff
on the household composition certification and perform a retroactive income certification, *see*
Am. Compl. ¶¶ 69-71, there is no evidence in the record to support these allegations, *see* 56.1
Stmt. (Dkt. No. 81), ¶¶ 153, 156. Moreover, Plaintiff has not, and cannot, point to any statute,
regulation, or other authority to support a basis requiring HUD to "perform a retroactive income
certification."

reasons set forth in HUD's prior submissions, HUD's motions for judgment on the pleadings and summary judgment should be granted.

Dated:   New York, New York
         September 2, 2016

                              Respectfully submitted,

                              PREET BHARARA
                              United States Attorney for the
                              Southern District of New York

                              *Attorney for Defendant United States*
                              *Department of Housing & Urban*
                              *Development*

                   By:   */s/ Natasha W. Teleanu*
                         NATASHA W. TELEANU
                         Assistant United States Attorney
                         86 Chambers Street, Third Floor
                         New York, New York  10007
                         Telephone:  (212) 637-2528
                         Facsimile:   (212) 637-2786