UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------X

LONNETTE GREENE,

        Plaintiff,                                     No. 14 Civ. 3676 (AT)

  vs.

UNITED STATES DEPARTMENT OF
HOUSING AND URBAN DEVELOPMENT;
DESHLER APARTMENT ASSOCIATES, L.P.,

        Defendants.
-------------------------------------------------------------X

## MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT DEPARTMENT OF HOUSING AND URBAN DEVELOPMENT'S MOTIONS FOR JUDGMENT ON THE PLEADINGS AND SUMMARY JUDGMENT

LETITIA JAMES
*AMICUS CURIAE*
Public Advocate for the City of New York
Jennifer Levy, Esq. (JL 1682)
General Counsel - Litigation
1 Centre St., 15th Floor
New York, N.Y. 10001
(212) 669-2175

**TABLE OF CONTENTS**

**TABLE OF AUTHORITIES** …………………………………………………….*i*

**INTEREST OF *AMICUS CURIAE***……………………………………….....1

**PRELIMINARY STATEMENT** …………………………………………...........2

**ARGUMENT** ……………………………………………………………………..3

    **I.**    **LONNETTE GREENE WAS A SECTION 8 PARTICIPANT BY VIRTUE OF HER MEMBERSHIP IN THE TENANT FAMILY PRIOR TO HER REMOVAL FROM THE HOUSEHOLD COMPOSITION**…………………………………………………....3

    **II.**    **INDIVIDUALS WHO ARE AUTHORIZED MEMBERS OF A SECTION 8 TENANT FAMILY HAVE A LEGITIMATE CLAIM OF ENTITLEMENT TO THE CONTINUED RECEIPT OF THE FAMILY'S SUBSIDY**……………………………………………...4

    **III.**    **LONNETTE GREENE WAS ENTITLED TO DUE PROCESS PRIOR TO HER INITIAL REMOVAL FROM THE FAMILY COMPOSITION**…………………………………………………….5

    **IV.**    **HUD FAILED IN ITS OBLIGATION TO ENSURE THAT THE OWNERS FURNISHED ACCURATE INCOME AND HOUSEHOLD COMPOSITION INFORMATION**………………..7

**CONCLUSION** ……………………………………………………………......8

# **TABLE OF AUTHORITIES**

*Cases*                                                                                                         Page

*Escalera v. New York Housing Auth.*,
    425 F.2d 853, 861 (2d Cir. 1970)……………………………………………….6
*Green v. Safir*,
    664 N.Y.S.2d 232 (N.Y. Sup. Ct. 1997) ………………………………………..1
*Jeffries v. Georgia Residential Fin. Auth.*,
    678 F.2d 919 (11th Cir. 1982) ………………………………………………...6
*Matter of Bajana v. Rhea*,
    2010 NY Slip Op. 32436[U](Sup. Ct., NY County 2010)……………………6
*Matter of Moreta v. Cestero*,
    32 Misc.3d 563, 570 (Sup. Ct. NY County 2011)…………………………...4, 6
*Morrisania II Assoc. v. Harvey,*
    139 Misc.2d 651, 655 (Civ. Ct. Bronx County 1988)………………………..4

*Statutes, Regulations & Policy Materials*

42 U.S.C. §§ 1437f(a),(k)……………………………………………………………3, 7
42 U.S.C. § 14043e-11 …………………………………………………………………..5
24 C.F.R. §5.403 ………………………………………………………………………….4
24 C.F.R. §880.504(a) ……………………………………………………………………3
N.Y.C. Charter § 24 ……………………………………………………………………..1
City of NY, Local Law No. 029 [2007] ………………………………………………..1
City of NY, Int. 217 [2010]……………………………………………………………..1
City of NY, Local Law 10 [2008] ……………………………………………………..1
HUD Handbook 4350.3, §§3-1, 3-16……………………………………………….3, 7
HPD Housing Choice Voucher Program,
    Administrative Plan, *April 15, 2016, § 5.1.4* …………………………………4, 8
New York State's Homes and Community Renewal
    Statewide Section 8 Voucher Program,Section 8 Housing Choice Voucher
    Administrative Plan, *Effective April 1, 2015, § 12* …………………………….5

*Other Sources*

THE NYU FURMAN CENTER,
    *2014 New York City Affordable Rental Housing Landscape* (Apr. 23, 2014),
        http://furmancenter.org/NYCRentalLandscape………………………………2
THE CENTER FOR URBAN PEDAGOGY,
    *What is Affordable Housing?* (2009),
        http://welcometocup.org/file_columns/0000/0011/cup-fullbook.pdf. ………..2
Fermino, Jennifer, *City Blames Lack of Affordable Housing for Record Number of
    Homeless New Yorkers,* NY DAILY NEWS (Sep. 20, 2016) …………………..2

**INTEREST OF AMICUS CURIAE**

The Public Advocate for the City of New York, Letitia James, is a citywide elected official and an *ex-officio* member of the New York City Council. N.Y.C. Charter § 24. The Public Advocate is charged with monitoring, investigating, and reviewing the actions of City agencies. She is also responsible for identifying systemic problems, recommending solutions, and publishing reports concerning her areas of inquiry. She has the power to introduce legislation and hold oversight hearings on legislative matters. *Id*. at § 24. The Office of the Public Advocate was created to serve as a "watchdog" against the inefficient or inadequate operation of City government. *Green v. Safir*, 664 N.Y.S.2d 232 (N.Y. Sup. Ct. 1997).

Prior to her election as Public Advocate, Letitia James was a member of City Council representing Brooklyn's 35th Council District for two terms. She used her office to advance the interests of low-income people in substandard housing. She was pivotal in enacting City of NY, Local Law No. 029 [2007], which created the Alternative Enforcement Program. Under the Alternative Enforcement Program, the worst buildings in the City are targeted by the City's Department of Housing Preservation and Development ("HPD") for comprehensive emergency repairs. When, in 2009, the City's Housing Authority ("NYCHA") terminated 3,000 active Section 8 housing vouchers, Councilmember James introduced legislation that would have given priority for public housing to those holding canceled vouchers. City of NY, Int. 217 [2010]. And, in the face of widespread discrimination against Section 8 voucher holders, she helped pass City of NY, Local Law 10 [2008], prohibiting discrimination in rental housing based on one's source of income.

1

According to a report by New York University's Furman Center, half of New York City renters are rent-burdened, meaning they spend more than 30% of their income on housing.[1] The same report found that 600,000 renters are severely rent-burdened, meaning they spend more than 50% of their income on rent.[2] As a citywide elected official in a City with a perpetual housing crisis, the Public Advocate has deep concerns about the availability and affordability of our City's housing programs. Housing that is funded under Section 8 of the United States Housing Act has deeper subsidies than most, and as such is some of the only housing in the City that is affordable to its very low-income residents.[3] The stability of those families who rely on Section 8 housing is a matter of significant public interest, particularly as the City's number of homeless families reaches an all-time high.[4]

## PRELIMINARY STATEMENT

The following facts are not currently in dispute. The Plaintiff, Lonnette Greene, has lived in her federally subsidized, project-based Section 8 apartment for most of her life. *See* Def. Supp. Mem, p. 1 (Dkt. No. 92). In 2007, her mother had her removed from the household composition. *Id.,* p. 2. Later, it is alleged that Ms. Greene's mother sought to return the Plaintiff to the household composition but was not successful. *See See* Pl. Mem. in Opp'n to Mot. For Summ. J., p. 11 (Dkt. No. 78). After Ms. Greene's mother vacated the apartment, the private landlord, Deshler Apartment Associates, sought to evict her. The Judge in the eviction case dismissed the Petition, finding that under New York law, Ms. Greene was entitled to succeed to the apartment

---

[1] THE NYU FURMAN CENTER, *2014 New York City Affordable Rental Housing Landscape* (Apr. 23, 2014), http://furmancenter.org/NYCRentalLandscape.
[2] *Id.*
[3] THE CENTER FOR URBAN PEDAGOGY, *What is Affordable Housing?* (2009), http://welcometocup.org/file_columns/0000/0011/cup-fullbook.pdf.
[4] Fermino, Jennifer, *City Blames Lack of Affordable Housing for Record Number of Homeless New Yorkers,* NY DAILY NEWS (Sep. 20, 2016)

2

and the subsidy. *See* Pl. Mem. in Opp'n to Mot. For Summ. J., Ex. W (Dkt. No. 61-24). Defendant HUD disagreed, and refused to pay the subsidy. In refusing, they referenced their rule that only family members on the current household composition are entitled to succession. This proceeding ensued.

The Court has asked *amici* to address the following three questions: 1) whether Plaintiff was a "Section 8 participant" by virtue of her membership in the tenant family prior to her removal from the household composition; 2) whether individuals who are authorized members of a Section 8 tenant family have a legitimate claim of entitlement to the continued receipt of the family's subsidy; and 3) whether Plaintiff was entitled to due process prior to her initial removal from the family composition. Each of these questions must be answered in the affirmative. Any other answer would permit a head of household to cut off an innocent party's federally protected interest in subsidized housing without notice or an opportunity to be heard. That result is contrary to the goals and operation of the Section 8 program.

## ARGUMENT

**I.     LONNETTE GREENE WAS A SECTION 8 PARTICIPANT BY VIRTUE OF HER MEMBERSHIP IN THE TENANT FAMILY PRIOR TO HER REMOVAL FROM THE HOUSEHOLD COMPOSITION.**

Section 8 of the United States Housing Act was enacted for "the purpose of aiding low-income families in obtaining a decent place to live." 42 U.S.C. § 1437f(a). Under the Section 8 New Construction program, which is the type of project-based program here, the regulations provide that the owner is responsible for making available a promised number of apartments for eligible families. 24 C.F.R. §880.504(a). The HUD Handbook that applies to project-based Section 8, sets forth the "requirements and procedures for determining whether applicant families may participate in HUD-subsidized multifamily housing programs." HUD Handbook

4350.3, §3-1. Up until 2007, the Plaintiff was a member of the family on whose behalf assistance payments were made. She was therefore a participant in the Section 8 program up until she was removed from the household composition. *See Matter of Moreta v. Cestero*, 32 Misc.3d 563, 570 (Sup. Ct. NY County 2011)("for project-based programs, `rental assistance is paid for families'"); *Morrisania II Assoc. v. Harvey,* 139 Misc.2d 651, 655 (Civ. Ct. Bronx County 1988)(the "program recognizes the entire family as the tenant, entitled to occupancy and assistance.)"

## II. INDIVIDUALS WHO ARE AUTHORIZED MEMBERS OF A SECTION 8 TENANT FAMILY HAVE A LEGITIMATE CLAIM OF ENTITLEMENT TO THE CONTINUED RECEIPT OF THE FAMILY'S SUBSIDY.

The regulations governing the various Section 8 programs contemplate that assistance will continue to the remaining household members if the assisted family breaks up. The regulations, common to all Section 8 Programs, define "family" to include "the remaining member of a tenant family." 24 C.F.R. §5.403. While the regulations are silent on the criteria for succession, individual administering housing authorities have developed guiding principles that establish that remaining family members have a legitimate entitlement to continued receipt of the family's subsidy.

The Department of Housing Preservation and Development's (HPD's) Administrative Plan states that families who break up will be "assessed on a case-by-case basis to determine which family members remain assisted." *HPD Housing Choice Voucher Program, Administrative Plan, April 15, 2016, § 5.1.4.* Of paramount importance is not the identity of the original head of household, but rather, the identity of the participant with custody of the children. Similarly, New York State's Homes and Community Renewal's Annual Plan sets forth factors to be considered to determine which family members will continue to be assisted if a family

4

separates and cannot reach agreement concerning the receipt of the subsidy. Those factors are: 1) which family member has custody of dependent children; 2) which family member was the original head of household; 3) which family unit contains elderly or disabled members; 4) whether domestic violence was involved in the breakup; 5) which family members remain in the unit; and 6) the recommendations of social service professionals. *New York State's Homes and Community Renewal Statewide Section 8 Voucher Program, Section 8 Housing Choice Voucher Administrative Plan, Effective April 1, 2015, § 12*.

Additional support for the notion that the family, as opposed to the head of household, is the assisted unit can be found in the Violence Against Women Act reauthorization of 2013. The law was enacted to protect victims of domestic violence from being evicted as a result of sexual violence perpetrated against them. Perpetrators can be evicted for those violent acts, but not victims. Recognizing that both perpetrators and victims may have a claim to the subsidy, the Act allows owners and managers of Section 8 projects to bifurcate leases so that the victim and her family can remain even if the head of household is evicted. 42 U.S.C. § 14043e-11.

### III. LONNETTE GREENE WAS ENTITLED TO DUE PROCESS PRIOR TO HER INITIAL REMOVAL FROM THE FAMILY COMPOSITION.

HUD argues that Lonette Greene had no property interest in the family's Section 8 subsidy. Because she was not on the family composition at the time her mother left the household, she had no succession rights, and therefore no protectable interest. This argument cannot stand. Ms. Greene had a protectable property interest. That interest was extinguished. That termination of a protected interest must be capable of being challenged.

5

It is undisputed that Lonette Greene would have been entitled to succeed to the subsidy in 2006, before her mother removed her from the subsidy. If HUD's argument is correct, and Lonette Green did not experience the deprivation of a property interest when her application to succeed to the subsidy was denied in 2013, she was deprived of a property interest in 2007, when her rights of continued occupancy were extinguished. *See e.g. Jeffries v. Georgia Residential Fin. Auth.*, 678 F.2d 919 (11th Cir. 1982)(Section 8 tenants have constitutionally protected property rights in an expectation of continued occupancy and receipt of rent and utility subsidies); *Escalera v. New York Housing Auth.*, 425 F.2d 853, 861 (2d Cir. 1970)("The government cannot deprive a private citizen of his continued tenancy, without affording him adequate procedural safeguards even if public housing could be considered a privilege.")

In analogous cases, New York state courts have found that due process requires at least the opportunity to challenge the extinguishment of an interest, even if that interest has not yet vested. In *Matter of Moreta v. Cestero, 32 Misc.3d 563, 572* (Sup. Ct. NY County 2011), for example, a mother and daughter resided together in apartment in which the rent was paid, in part, by a Section 8 voucher. The mother, Martha Moreta, informed the Public Housing Authority that she was relocating and wished to transfer the subsidy to her daughter, Johanna Moreta. The Public Housing Authority moved to terminate the subsidy when Martha failed to produce requested documentation concerning the move. The Housing Authority implicitly argued that the daughter's rights were wholly derived from her mother's and she had no independent ability to challenge the termination. The Court rejected the Housing Authority's argument, noting that the Section 8 program goal of assisting families. The Court found that the daughter was entitled to challenge the termination.

In *Matter of Bajana v. Rhea*, 2010 NY Slip Op. 32436[U](Sup. Ct., NY County 2010), the Housing Authority made a solipsistic argument similar to HUD's argument here. In that case, mother and daughter originally resided together. The daughter, who suffered from mental illness, had left the household in a quest for independence. Shortly later, she returned to her mother's home. Housing Authority policy prevents original household members from rejoining the household after a period of absence as permanent household members. Per policy, once a family member vacates, they can only return as a conditional household member. Conditional household members are not entitled to succession rights. The mother was never given the option of adding the daughter as a permanent household member, and neither party was given notice or an opportunity to contest the decision that ultimately would have deprived the daughter of succession rights. Like HUD is doing here, the Housing Authority argued that its unilateral determination was unchallengeable. The Court rejected the Housing Authority's argument, finding the Housing Authority's position to be inconsistent with the goals and operation of the Section 8 program and with the requirements of due process.

**IV.   HUD FAILED IN ITS OBLIGATION TO ENSURE THAT THE OWNERS FURNISHED ACCURATE INCOME AND HOUSEHOLD COMPOSITION INFORMATION.**

In their supplemental papers, HUD argues that it is not responsible for the Plaintiff's mother's failure to meet her obligation to certify the household composition accurately. HUD is culpable, however, for its own failure to meet its statutory obligation to "establish procedures which are appropriate and necessary to assure that income data provided to public housing agencies and owners by families applying for or receiving assistance [] is complete and accurate." 42 U.S.C. § 1437f(k).

7

HUD has established detailed income verification procedures in connection with tenants' annual recertifications in project-based Section 8 programs. *See generally* HUD Handbook 4350.3. In the case of public housing in New York City, residents must document changes in household composition. *See NYCHA House Rules,* https://www1.nyc.gov/assets/nycha/downloads/pdf/Higlhlights%20of%20House%20Rules%20-%20English.pdf. HPD also requires verification before implementing changes in household composition. *See HPD Housing Choice Voucher Program, Administrative Plan, April 15, 2016, § 10.5.1*. HUD has, however, left it up to the discretion of individual owners whether to demand external verification of a family member's departure from the assisted unit. HUD's failure to impose more rigorous standards, as required by statute, is an oversight that resulted directly in the erroneous deprivation of Ms. Greene's right to continued occupancy without the opportunity for review – a constitutionally impermissible result.

## **CONCLUSION**

For all of the above reasons, HUD's motions should be denied.


Dated:       October 24, 2016
             New York, NY

                              Respectfully submitted,

                              OFFICE OF THE PUBLIC ADVOCATE
                              FOR THE CITY OF NEW YORK

                              By:    /s/

                              _____
                              Jennifer Levy, Esq. (JL 1682)
                              *Attorney for Letitia James*

8

*Public Advocate for the City of New York*
1 Centre St., 15th Floor
New York, N.Y. 10001
(212) 669-2175

9