**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

LONNETTE GREENE,

          Plaintiff,

    vs.

UNITED STATES DEPARTMENT OF
HOUSING AND URBAN DEVELOPMENT;
DESHLER APARTMENT ASSOCIATES, L.P.,

       Defendants.

No. 14 Civ. 3676 (AT)

**SUBMISSION OF DEFENDANT UNITED STATES DEPARTMENT OF HOUSING
AND URBAN DEVELOPMENT IN RESPONSE TO *AMICI CURIAE* BRIEFS OF THE
LEGAL AID SOCIETY, PROFESSOR PARIS R. BALDACCI, AND THE PUBLIC
ADVOCATE FOR THE CITY OF NEW YORK**

PREET BHARARA
United States Attorney for the
Southern District of New York
86 Chambers Street, Third Floor
New York, New York 10007
Telephone:  (212) 637-2528
Facsimile:   (212) 637-2786

*Attorney for Defendant United States
Department of Housing and Urban
Development*

NATASHA W. TELEANU
Assistant United States Attorney
– Of Counsel –

**TABLE OF CONTENTS**

INTRODUCTION ...................................................................................................1

I.      The Legal Aid Society Fails to Identify Any Basis Warranting Granting Due Process
        Protections to an Individual Seeking to Challenge a Family's False Certification ............2

II.     Professor Baldacci's Public Policy Arguments Are Contrary to the Section 8
        Framework ........................................................................................................5

III.    The Public Advocate Fails to Explain How HUD's "Detailed Income Verification
        Procedures" Are Inadequate ...........................................................................11

CONCLUSION...................................................................................................13

# TABLE OF AUTHORITIES

**CASES**                                                                                    **PAGE**

*2013 Amsterdam Avenue Housing Associates v. Estate of Wells*,
    814 N.Y.S.2d 893 (App. Div. 2006) ...............................................................10

*Academy Gardens Associates v. Rivers*,
    Index No. 82259 (Civil Ct. Bronx County June 4, 1987) ................................10

*Baldwin v. Housing Authority of City of Camden, New Jersey*,
    278 F. Supp. 2d 365 (D.N.J. 2003) ...................................................................9

*Braschi v. Stahl Associates Co.*,
    544 N.Y.S.2d 784 (1989).....................................................................................8

*Bronx 361 Realty, L.L.C. v. Quinones*,
    907 N.Y.S.2d 98 (Civil Ct. Bronx County 2010) ..........................................10

*Chevron, U.S.A., Inc. v. Natural Res. Def. Council, Inc.*,
    467 U.S. 837, 844 (1984)…………………………………………………...11

*City of New York v. Scott*,
    657 N.Y.S.2d 600 (App. Div. 1997) ...................................................................9

*Drucker v. Mauro*,
    814 N.Y.S.2d 43 (App. Div. 2006) .....................................................................9

*Extell Belnord LLC v. Uppman*,
    976 N.Y.S.2d 22 (App. Div. 2013) .....................................................................9

*Grossbard v. New York State Division of Housing & Community Renewal*,
    28 N.Y.S.3d 54 (App. Div. 2016) .......................................................................9

*Hochhauser v. City of New York Department of Housing Preservation & Development*,
    853 N.Y.S.2d 22 (App. Div. 2008) .....................................................................9

*J.S. v. T'Kach*,
    714 F.3d 99 (2d Cir. 2013)…………………………………………………...5, 6

*Los Tres Unidos Associates, LP v. Colon*,
    3 N.Y.S.3d 285 (App. Div. 2014)......................................................................10

*Lowery v. District of Columbia Housing Authority,*
    2006 WL 666840 (D.D.C. Mar. 14, 2006) ..................................................9, 10

*Manhattan Plaza Assocs., L.P. v. Department of Housing Preservation and Development of the
    City of New York*,
    778 N.Y.S.2d 164 (App. Div. 2004) ...................................................................9

*Marine Terrace Associates v. Kesoglides*,
    998 N.Y.S.2d 306 (App. Div. 2014) ..................................................................10

*McFarlane v. New York City Housing Authority*,
    780 N.Y.S.2d 135 (App. Div. 2004) ....................................................................8

*Morissania II Associates v. Harvey*,
    527 N.Y.S.2d 954 (Civil Ct. Bronx County 1988) ............................................10

*Murphy v. New York State Division of Housing & Community Renewal*,
    977 N.Y.S.2d 161 (2013) ......................................................................................8

*Perry v. Sindermann*,
    408 U.S. 593 (1972) ..........................................................................................1, 3

*Pietropolo v. New York City Department of Housing Preservation & Development*,
    836 N.Y.S.2d 16 (App. Div. 2007) ......................................................................9

*Renda v. New York State Division of Housing & Community Renewal*,
    802 N.Y.S.2d 655 (App. Div. 2005) ....................................................................9

*Rent Stabilization Association of New York City Inc. v. Higgins*,
    83 N.Y.2d 156 (1993) ...........................................................................................9

*Russo v. New York City Housing Authority*,
    10 N.Y.S.3d 49 (App. Div. 2015) .........................................................................8

*United States v. Mead Corp.*,
    533 U.S. 218 (2001) ............................................................................................12

*Washington v. Los Angeles Second Baptist Homes, Inc.*,
    2014 WL 2197757 (C.D. Cal. May 24, 2014) ......................................................6

*Westwood Houses, Inc. v. Hayes*,
    819 N.Y.S.2d 214 (App. Div. 2006) ....................................................................9

**STATUTES**

42 U.S.C. § 1437f .................................................................................... *passim*

**RULES AND REGULATIONS**

24 C.F.R. § 5.609 ......................................................................................................3

24 C.F.R. § 5.611 ......................................................................................................3

24 C.F.R. § 5.659 ...............................................................................................3, 4, 11

24 C.F.R. § 880.607 ...............................................................................................4, 8

24 C.F.R. Part 881....................................................................................................9

24 C.F.R. § 982.555 ...........................................................................................................10

24 C.F.R. Part 982 ...............................................................................................................9

Defendant United States Department of Housing and Urban Development ("HUD"), by its attorney, Preet Bharara, United States Attorney for the Southern District of New York, respectfully submits this memorandum in response to the *amici curiae* briefs submitted, at the Court's direction, by The Legal Aid Society (Dkt. No. 99), Professor Paris Baldacci (Dkt. No. 102), and the Public Advocate for the City of New York (the "Public Advocate") (Dkt. No. 105), all in support of plaintiff Lonnette Greene's ("Plaintiff") due process claims.

## INTRODUCTION

As set forth in HUD's prior submissions to this Court, the cornerstone prerequisite for participation in the Section 8 program is the requirement that families provide accurate and complete information to Section 8 landlords, who are charged with verifying program eligibility setting appropriate subsidy amounts. While the *amici curiae* submissions argue that individuals seeking to challenge their omission from Section 8 household composition certifications are entitled to due process protections, their arguments do not and cannot satisfy the Court's direction to present arguments supported by "applicable regulations, HUD policy, and caselaw." *See* Aug. 16, 2016 Order (Dkt. No. 89). Rather, basic due process jurisprudence requires that any claim of entitlement can only arise from and must be supported by the rules and understandings set forth in the Section 8 framework. *See Perry v. Sindermann*, 408 U.S. 593, 601 (1972) ("A person's interest in a benefit is a 'property' interest for due process purposes if there are such rules or mutually explicit understandings that support his claim of entitlement to the benefit and that he may invoke at a hearing."). For the reasons set forth below, none of the *amici curiae* provide any viable arguments supporting Plaintiff's purported claim that she has a due process right as against HUD to challenge her family's submission of Section 8 certifications omitting her from the household composition.

1

I.      **The Legal Aid Society Fails to Identify Any Basis Warranting Granting Due Process Protections to an Individual Seeking to Challenge a Family's False Certification**

The Legal Aid Society's arguments are imprecise and difficult to pin down, if not internally inconsistent.  On one hand, The Legal Aid Society broadly asserts that an individual seeking to challenge his or her family's submission of a false certification to HUD is entitled to a due process hearing, yet on the other hand, and perhaps recognizing the unworkable sweep of this position, it ultimately attempts to cabin its position to unspecified, assertedly "singular circumstances."  The Legal Aid Society Br. at 8.  Further blurring its position, The Legal Aid Society concludes that while "some process" was owed to Plaintiff prior to her family's exclusion of her name from the household composition, it posits that "in the alternative," Plaintiff was certainly owed due process upon her mother's abandonment of her Section 8 subsidy and defendant Deshler's refusal to recognize Plaintiff as a remaining family member. *See id.* at 3-4.

Notwithstanding its lack of analytical clarity, The Legal Aid Society insists that Plaintiff was entitled to a hearing—presumably administered by HUD—with the burden initially on Plaintiff to demonstrate that she was an "authorized member of the household" who continuously resided in the Section 8 apartment, and thereafter shifting to defendant Deshler "to demonstrate that its predecessor in interest properly followed HUD's rules and regulations in approving her removal."  *See id.* at 4, 8.[1]  The Legal Aid Society appears to argue that the purported due

---

[1] Notably, The Legal Aid Society's hypothetical hearing fails to identify what purported entitlement would be explored.  Because Plaintiff was omitted from the certifications, which are the bases upon which Section 8 subsidies are calculated and paid, she ceased being an "authorized member" of any Section 8 household.  *See* Dkt. No. 92 at 5-13; Dkt. No. 95 at 3-6.   Moreover, The Legal Aid Society provides no explanation for how or why such a hearing could even result in Plaintiff being awarded a Section 8 subsidy, since the Section 8 program is framed in terms of a family (versus individuals) receiving benefits, and Plaintiff's family failed to uphold its obligations.  *See* 42 U.S.C. § 1437f(k) (Income data "shall be used only for the purpose of verifying incomes in order to determine *eligibility of families* for benefits (and the amount of such benefits, if any) under this section." (emphasis added)).

process right giving rise to this hearing requirement arises out of a property owner's supposed responsibility to verify the household composition certifications. *See id.* at 6 ("While Ms. Greene's mother submitted a false certification improperly removing Ms. Greene from the household composition, it was clearly the property owner's responsibility to verify the information, where, as here, the removal of Ms. Greene affected the determination of adjusted income.").  However, contrary to The Legal Aid Society's unsupported assertion that this responsibility "clearly" exists, there is no requirement or obligation in the Section 8 regulatory framework that a property owner must independently verify that each certification has not improperly omitted a family member. *See infra* pp. 3-4.  Due process protections, in turn, can only exist where an individual has a legitimate claim of entitlement to a property interest, defined by "rules or mutually explicit understandings" set forth in statutes and regulations. *See Perry*, 408 U.S. at 601.  The case law cited by The Legal Aid Society recognizing that recipients of Section 8 are entitled to due process protection prior to the termination of a Section 8 subsidy fails to support any entitlement or right of a family member to be listed by the family on the household composition. *See* The Legal Aid Society Br. at 5.

The plain language of the Section 8 regulation cited by The Legal Aid Society, Title 24, Section 5.659(d)(4), pertains to the calculation of a family's adjusted income, and does not support The Legal Aid Society's claim that defendant Deshler was required to verify Plaintiff's non-existence (and unreported income) on the Form 50059 verification form. *Cf.* 24 C.F.R. § 5.659(d)(4); *id.* § 5.609 (defining "Annual income"); § 5.611 (defining "Adjusted income," and mandatory deductions from a household's "annual income").  Moreover, the HUD Handbook provides that while property owners may independently verify family composition, their decision whether to do so is wholly discretionary. *See* HUD Handbook § 3-27.A ("Owners may seek

3

verification of family composition only if the owner has clear written policy.  Verification is not required."); *see also id.* Appendix 3 at 11.[2]  Thus, The Legal Aid Society's claim that "the property owner has completely failed to comply with its own obligations under the program" is incorrect because a property owner has no obligation or requirement to independently verify a family's omission of a household member.  *See* The Legal Aid Society Br. at 7; *see also id.* at 5.

Rather, the Section 8 regulatory framework places the onus on the Section 8 family—not HUD—to provide accurate and complete information regarding family composition and income. *See* 42 U.S.C. § 1437f(k); 24 C.F.R. § 5.659(b)(2), (4); 24 C.F.R. § 880.607(b)(3); *see, e.g.*, Waglow Decl. (Dkt. No. 61), ¶ 11 & Ex. J (HUD Form 50059); HUD Form 50059, *available at* http://portal.hud.gov/hudportal/documents/huddoc?id=50059.pdf.  HUD's promulgation of regulations regarding the certification process, pursuant to Section 1437f(k), does not, contrary to The Legal Aid Society's assertion, "obligate[ HUD] to provide due process protections."  *See* The Legal Aid Society Br. at 8.  Moreover, Plaintiff has not challenged the sufficiency of HUD's Section 8 regulations (a claim that would presumably be made pursuant to the Administrative Procedure Act).  And even assuming such an argument was before the Court, The Legal Aid Society fails to provide any explanation for how or why HUD's regulations regarding the annual and interim certification process and HUD's Form 50059—which requires adult family members to certify under penalty of perjury the household composition—are inadequate.  Instead, The Legal Aid Society ignores these requirements altogether, and concludes that "here there was seemingly no process to ensure that [Plaintiff's] removal was proper."  *See id.* at 7.  But that "removal" was done by the tenant family, not by the landlord, and certainly not by HUD.  The process The Legal Aid Society insists is necessary requires an implicit assumption that Section 8

---

[2] The HUD Section 8 Handbook is publicly available at
http://portal.hud.gov/hudportal/HUD?src=/program_offices/administration/hudclips/handbooks/hsgh/4350.3.

families cannot be expected or required, in the first instance, to provide accurate, truthful information to the Government—an assumption that would undermine not only Section 8, but many other Governmental programs and requirements, such as the submission of tax returns, applications for Social Security benefits, grant applications, and loan forms.

Finally, The Legal Aid Society's argument that because HUD promulgated regulations regarding family certification it must provide procedural protections for any omitted family member misapprehends the nature of the certification process. *See id.* at 8.  While there is no discretion on the part of Section 8 families, and rather an explicit requirement, to provide accurate and complete information, neither HUD nor building owners play any role in providing household composition information for the certification process.  Moreover, as HUD has previously argued, the family's omission of Plaintiff from its household composition form involved no Government action, which would be necessary for Plaintiff to invoke the procedural protections of the due process clause, and which would be the only relevant conduct capable of being explored at a due process hearing.

## II.      Professor Baldacci's Public Policy Arguments Are Contrary to the Section 8 Framework

Instead of focusing on the statutory and regulatory framework of Section 8 as directed by the Court, Professor Baldacci's brief focuses on his views of the "public policy and jurisprudential context" to argue that Plaintiff should be "allowed to challenge her mother's failure to include her in the family composition [beginning] in 2005 … and Deshler Apartments' failure to provide her with notice of that fact and an opportunity to challenge it."  Baldacci Br. at 3, 11.[3]  It is simply impossible to reconcile Professor Baldacci's public policy arguments with

---

[3] As HUD has repeatedly argued, and Professor Baldacci makes clear, Plaintiff's claims do not involve any alleged actions by HUD.  Without any Governmental action depriving Plaintiff of a purported right, she cannot maintain a due process claim.  *See J.S. v. T'Kach*, 714 F.3d 99, 105 (2d Cir. 2013) ("[A]

the Section 8 program, and consequently, with any meaningful due process analysis.  Indeed,

Professor Baldacci's brief contains numerous inaccurate statements that reveal an unfamiliarity

with Section 8.

For example, Professor Baldacci argues that "the mere fact that [Plaintiff's] mother failed

to include her in the family composition in 2005 and after had no legal effect in and of itself."

*Id.* at 4.  This is wholly and egregiously inaccurate.  The failure of Plaintiff's family to include

her on the annual and interim recertification forms not only violated the Section 8 statute, but,

because Plaintiff was earning income in those years, HUD did not take into account Plaintiff's

income, thereby causing the Government to pay a larger subsidy on behalf of Plaintiff's family

than the family was entitled to receive.  *See* 42 U.S.C. § 1437f(k); *see also Washington v. Los*

*Angeles Second Baptist Homes, Inc.*, 2014 WL 2197757, at *6 (C.D. Cal. May 24, 2014) ("An

unauthorized resident might have income that would—if accounted for—decrease the [subsidies

paid] to the owner, or cause the family to exceed Section 8's income limit.").  To that end,

Professor Baldacci's reference to Plaintiff paying rent over the years somehow in "rel[iance] on

HUD's promise" is incorrect since HUD calculated and paid the Section 8 subsidy without

knowledge of Plaintiff's alleged presence in the household.  *See* Baldacci Br. at 1, 4.

Equally unsupported and incorrect is Professor Baldacci's claim that a Section 8 subsidy

is an absolute benefit bestowed upon remaining family members, no matter the circumstance.

*See* Baldacci Br. at 5 ("[T]he promise is that this subsidy will continue to the benefit of the

remaining member of the tenant-family even after the head of household leaves or dies."); *id.* at

6 ("[Section 8] guarantee[s] that the remaining family member will not lose the subsidy and

---

plaintiff must 'first identify a property right, second show that the [government] has deprived him of *that*
right, and third show that the deprivation was effected without due process." (second and third alterations
in original)).  Rather, Plaintiff seeks to challenge the actions of her own mother, a private citizen.  *See,*
*e.g.*, Dkt. No. 92 at 14 & n.4.

tenancy on the vacatur of the head of household.").  In reality, the underlying premise of the Section 8 program is that to be a remaining member of a Section 8 tenant family, an individual would need to first be reported on the household composition for whom a Section 8 subsidy is paid, and the HUD Handbook sets forth *additional* eligibility requirements for individuals seeking to qualify as remaining family members for purposes of receiving a Section 8 subsidy continuation.  To qualify, the person must (1) be a party to the lease when the family member leaves the unit; and (2) be of legal contract age.  *See* HUD Handbook § 3-16.  Here, it is undisputed that Plaintiff was neither on the household composition certifications beginning in at least 2007 and thereafter, nor was she on the Section 8 lease signed by her mother.  *See* Waglow Decl., ¶¶ 9-10, 12 & Ex. K (certifications) & Exs. H, I (leases executed by Plaintiff's mother); *see also* Dkt. No. 58 at 13-20.  Thus, the statutory and regulatory framework belies Professor Baldacci's claim that "but for the family composition issue," Plaintiff has a right to her family's Section 8 subsidy.  *See* Baldacci Br. at 1, 4.

Professor Baldacci further errs by ignoring that a Section 8 family has an obligation to provide complete and accurate information regarding both its household composition and income, and by instead insinuating that HUD is somehow improperly "shifting responsibility to Ms. Greene and her mother," when that is precisely how Section 8 is structured.  *See id.* at 5.  And Professor Baldacci's lament that it is Plaintiff "who has been rendered truly powerless" rings hollow in light of her own agency and obligation, as an adult at all relevant times, to sign and certify the household composition, along with her mother and any other adult household members.  *See* Baldacci Br. at 5; *see, e.g.*, Waglow Decl., ¶ 11 & Ex. J (HUD Form 50059); Dkt. No. 58 at 13-20; HUD Form 50059, *available at* http://portal.hud.gov/hudportal/documents/huddoc?id=50059.pdf.  Professor Baldacci's

arguments are particularly unpersuasive in light of Plaintiff's unclean hands.

The Section 8 program clearly provides that the benefit of a subsidy is bestowed upon a family, and not any individual member of a family.  Thus, there is no provision or regulation entitling an individual, upon challenging her family's improper actions, to maintain a Section 8 subsidy.  In fact, contrary to Professor Baldacci's assertion that "[t]he acts of other family members, including one[']s mother, should not be allowed to alienate this valuable property interest," both members and non-members of a family can jeopardize a family's continuing entitlement to a Section 8 subsidy.  *See* Baldacci Br. at 4; *see also* 24 C.F.R. § 880.607 (termination of family tenancy for enumerated reasons, including criminal activity by a family member or guest); HUD Handbook §§ 8-11 through 8-16 (grounds for termination).

Professor Baldacci relies almost exclusively on his own view of public policy and other regulatory frameworks to argue that, pursuant to Section 8, HUD must accept that Plaintiff is entitled to succeed to her mother's Section 8 subsidy benefit despite her mother's failure to report her on required certifications.  But New York City and State regulatory frameworks are not binding on HUD.  Indeed, almost all of the state-court cases cited by Professor Baldacci relate to the Mitchell-Lama Housing Program in New York State ("Mitchell-Lama"), the New York City Housing Authority ("NYCHA"), the New York City Rent and Eviction Regulations ("NYCRR"), the New York State Division of Housing and Community Renewal ("DHCR"), or the Department of Housing Preservation and Development ("HPD").  *See Murphy v. N.Y. State Div. of Hous. & Cmty. Renewal*, 977 N.Y.S.2d 161 (2013) (Mitchell-Lama); *Figueroa v. N.Y.C. Hous. Auth.*, 35 N.Y.S.3d 338 (App. Div. 2016) (NYCHA); *Russo v. N.Y.C. Hous. Auth.*, 10 N.Y.S.3d 49 (App. Div. 2015) (NYCHA); *McFarlane v. N.Y.C. Hous. Auth.*, 780 N.Y.S.2d 135 (App. Div. 2004) (NYCHA); *Braschi v. Stahl Assocs. Co.*, 544 N.Y.S.2d 784 (1989) (NYCRR);

8

*Grossbard v. N.Y. State Div. of Hous. & Cmty. Renewal*, 28 N.Y.S.3d 54 (App. Div. 2016) (DHCR); *Extell Belnord LLC v. Uppman*, 976 N.Y.S.2d 22 (App. Div. 2013) (DHCR); *Renda v. N.Y. State Div. of Hous & Cmty. Renewal*, 802 N.Y.S.2d 655 (App. Div. 2005) (DHCR and Mitchell-Lama); *Rent Stabilization Ass'n of N.Y.C. Inc. v. Higgins*, 83 N.Y.2d 156 (1993) (DHCR); *Hochhauser v. City of N.Y. Dep't of Hous. Pres. & Dev.*, 853 N.Y.S.2d 22 (App. Div. 2008) (HPD and Mitchell-Lama); *Pietropolo v. N.Y.C. Dep't of Hous. Pres. & Dev.*, 836 N.Y.S.2d 16 (App. Div. 2007) (HPD and Mitchell-Lama); *Drucker v. Mauro*, 814 N.Y.S.2d 43 (App. Div. 2006) (HPD and Rent Stabilization Code); *Westwood Houses, Inc. v. Hayes*, 819 N.Y.S.2d 214 (App. Div. 2006) (HPD and Mitchell-Lama); *Manhattan Plaza Assocs., L.P. v. Dep't of Hous. Pres. & Dev. of the City of N.Y.*, 778 N.Y.S.2d 164 (App. Div. 2004) (HPD); *City of N.Y. v. Scott*, 657 N.Y.S.2d 600 (App. Div. 1997) (HPD Successor Tenants Policy).

The only federal case cited by Professor Baldacci, *Lowery v. District of Columbia Housing Authority*, involves the Section 8 Housing Choice Voucher Program, which is distinct from the Section 8 project-based program that Plaintiff challenges, and involves different federal regulations.[4]  2006 WL 666840, at *1, 9 (D.D.C. Mar. 14, 2006).  In *Lowery*, the court concluded that the local housing authority (not HUD) violated the plaintiff's Section 1983 rights where the Section 8 Voucher Program regulations provide that if a family is absent from an

---

[4] *See, e.g.*, *Baldwin v. Hous. Auth. of City of Camden, N.J.*, 278 F. Supp. 2d 365, 369 n.3 (D.N.J. 2003) ("Section 8 housing assistance programs fall into two general categories: tenant-based assistance (vouchers) and project-based assistance. Tenant-based assistance is rental assistance that is not attached to a structure or particular rental unit. It is administered by a local public housing authority. Under a tenant-based assistance program, tenants are given rental assistance vouchers and then find landlords willing to accept them. The vouchers are 'portable' and tenants may move to different rental units owned by landlords willing to accept the vouchers. By contrast, project-based assistance is linked to a specific federally-subsidized apartment. The assistance does not travel with a tenant and if a tenant moves, it is lost. *See* 42 U.S.C. § 1437f(a)-(g)."); *see also* 24 C.F.R. Part 881 (Regulations regarding Section 8 Housing Assistance Payments for Substantial Rehabilitation); 24 C.F.R. Part 982 (Regulations regarding Section 8 Tenant-Based Assistance: Housing Choice Voucher Program).

assisted unit for more than 180 days, the Section 8 voucher may be terminated, but a "reasonably expeditious" hearing must be held—regulations that are not applicable to Section 8 project-based assistance. *See id.* at *9 (citing 24 C.F.R. § 982.555). Professor Baldacci also relies on a string of New York state court decisions entertaining claims by individuals who were not reported on the Section 8 certifications—holdover proceedings between a landlord and a tenant—but none of these involve HUD as a party, or a federal Fifth Amendment due process challenge. *See Los Tres Unidos Assocs., LP v. Colon*, 3 N.Y.S.3d 285 (App. Div. 2014); *Marine Terrace Assocs. v. Kesoglides*, 998 N.Y.S.2d 306 (App. Div. 2014); *2013 Amsterdam Ave. Hous. Assocs. v. Estate of Wells*, 814 N.Y.S.2d 893 (App. Div. 2006); *Bronx 361 Realty, L.L.C. v. Quinones*, 907 N.Y.S.2d 98 (Civil Ct. Bronx Cnty. 2010); *Morissania II Assocs. v. Harvey*, 527 N.Y.S.2d 954 (Civil Ct. Bronx Cnty. 1988); *Academy Gardens Assocs. v. Rivers*, Index No. 82259 (Civil Ct. Bronx Cnty. June 4, 1987). Moreover, these cases are in tension with the controlling New York Court of Appeals opinion in *Evans v. Franco*, in which New York's highest court held that an individual seeking to assume a Section 8 subsidy where he was not listed on the certification forms was not entitled to a hearing to confirm his status. *See* 93 N.Y.2d 823, 825 (N.Y. 1999) ("Given the 13 unequivocal annual statements by the deceased that she lived in the apartment alone, there is no basis on this record to conclude that petitioner is a family member or that a hearing is necessary to confirm his status.").

Lastly, Professor Baldacci's argument that HUD is somehow "refusing" to comply with a state housing court ruling that Plaintiff is entitled to succeed to her family's Section 8 subsidy— an action to which HUD was not a party and therefore could not be bound—is also incorrect. *See* Baldacci Br. at 5, 8, 11. Plaintiff admits that the state court "did not decide the issue of whether or not [she] was entitled to succeed to the project-based Section 8 subsidy attached to

the apartment." *See* Pl.'s Am. Compl. (Dkt. No. 22) ¶ 59.

**III.     The Public Advocate Fails to Explain How HUD's "Detailed Income Verification Procedures" Are Inadequate**

The Public Advocate argues that due process protections (presumably as against HUD) are necessary where a family excludes a family member from the household composition to protect the "innocent party's federally protected interest in subsidized housing."  NYC Public Advocate Br. at 3.  This argument perversely would deprive HUD of the ability, on which Section 8 is premised, to rely on household composition reports submitted by its thousands of subsidy beneficiary tenants, and, instead would require HUD, presumably annually, to independently investigate every such report and the family it relates to so as to determine whether any actual residents have been omitted, or any income misstated, or else would require HUD impose no consequences on tenants like Plaintiff's family who choose to submit false or incomplete certifications.  *See id.* at 7-8.  The Public Advocate argues that HUD's failure to *require* owners (rather than leave it to their discretion) to "demand external verification of a family member's departure from the assisted unit" violates 42 U.S.C. § 1437f(k).  *See id.*  Yet the Public Advocate concedes that HUD, pursuant to Congressional directive as set forth in Section 1437f(k), "has established detailed income verification procedures in connection with tenants' annual recertifications," and these regulations and rules are entitled to deference.  *See* NYC Public Advocate Br. at 7-8; 24 C.F.R. § 5.659(b); HUD Form 50059.  Nevertheless, the Public Advocate fails to "recognize[] that considerable weight should be accorded to an executive department's construction of a statutory scheme it is entrusted to administer, and the principle of deference to administrative interpretations."  *Chevron, U.S.A., Inc. v. Natural Res. Def. Council, Inc.*, 467 U.S. 837, 844 (1984) (footnote omitted).  Moreover, the Public Advocate fails to explain how HUD's "detailed income verification procedures" are defective, arbitrary,

capricious, or contrary to Section 1437f(k)'s mandate to establish appropriate procedures.  *See United States v. Mead Corp.*, 533 U.S. 218, 227 (2001) ("When Congress has 'explicitly left a gap for an agency to fill, there is an express delegation of authority to the agency to elucidate a specific provision of the statute by regulation, and any ensuing regulation is binding in the courts unless procedurally defective, arbitrary or capricious in substance, or manifestly contrary to the statute." (internal citations omitted)).  Also without explanation is the Public Advocate's assertion that HUD "fail[ed] to impose more rigorous standards, as required by statute."  NYC Public Advocate Br. at 8.  Not only do these contentions find no support in governing law or regulations, but they would lead to obvious problems—including imposing on landlords, and possibly HUD, cost-prohibitive and burdensome investigatory obligations, and subjecting subsidized tenants to ongoing intrusive scrutiny of their personal and financial lives.

In addition, the Public Advocate states that the Section 8 regulations are "silent on the criteria for succession," and suggests that the guidelines of New York City and State organizations tasked with administering, among other things, Section 8 should serve as a model. *See id.* at 4-5.  But this is both wrong and wholly unnecessary because HUD has defined the eligibility criteria to qualify as a Section 8 remaining family member.  *See* HUD Handbook § 3-16; *see also supra* p. 7.  Quite simply, Plaintiff does not qualify under those rules, but that does not reflect any non-existence of necessary rules, nor does it justify a ruling for Plaintiff. Moreover, the Administrative Plans for both the Department of Housing Preservation and Development ("HPD") and the New York State Homes and Community Renewal ("NYSHCR") (both of which pertain to the Section 8 voucher program, which is a different Section 8 program, *see supra* n. 2), and the Violence Against Women Reauthorization Act statute provisions addressing "families who break up" are inapposite to Plaintiff's situation, since at all relevant

12

times Plaintiff allegedly was living with her family, albeit unreported, and only sought to succeed to the voucher upon her mother's abandonment of the Section 8 apartment.  *See* NYC Public Advocate Br. at 4-5.  HUD's rules—not HPD's or NYSHCR's—control HUD's program, and HUD's rules expressly provide that to obtain remaining family member status, a family member must be listed on the Form 50059, be of legal contract age, and be a party to the lease. *See* HUD Form 50059; HUD Handbook § 3-16.

## CONCLUSION

For the reasons set forth more fully above, as well as the reasons set forth in HUD's prior submissions, HUD's motions for judgment on the pleadings and summary judgment should be granted.

Dated:    New York, New York
          November 21, 2016

                                        Respectfully submitted,

                                        PREET BHARARA
                                        United States Attorney for the
                                        Southern District of New York

                                        *Attorney for Defendant United States*
                                        *Department of Housing & Urban*
                                        *Development*

                              By:       */s/ Natasha W. Teleanu*
                                        NATASHA W. TELEANU
                                        Assistant United States Attorney
                                        86 Chambers Street, Third Floor
                                        New York, New York  10007
                                        Telephone:  (212) 637-2528
                                        Facsimile:   (212) 637-2786

13